JOHN M. LANCASTER v. COUNTY OF ATCHISON a Political Subdivision of the State of Missouri, and CARL M. HUNTER, D. J. CURRIE and SAM GRAVES, as and Constituting the County Court of the County of Atchison, and ROLLA COOK, Successor to R. O. Bartholomew, as County Treasurer of the County of Atchison, Appellants.—No. 38556.—180 S. W. (2d) 706.

Court en Banc, June 5, 1944.

1040

*H. B. Hunt* and *Culver, Phillip, Kaufmann & Smith* for appellants.

*Gerlash & Gerlash, Charles & Trauernicht* and *Seward McKittrick* for respondent.

1042

*Howell, Jacobs & Howell, Katherine Halterman* and *Scott R. Timmons* for Pyramid Life Insurance Company.

TIPTON, J.—This suit seeks a declaratory judgment upon certain questions of law arising from the following facts: The County Court of Atchison County, Missouri, by an order entered November 15, 1938, authorized the issuance of $350,000 Toll Bridge Revenue Bonds dated November 1, 1938, maturing absolutely on November 1, 1958, but callable and payable prior to maturity on any interest payment date. The bonds were issued under the authority of Laws of Missouri, 1933-34, Extra Session, pages 115 to 117, now found as Section 8547, Revised Statutes of Missouri, 1939.

Among other things, this order provided that the court found and determined a bridge across the Missouri River connecting the highways of the State of Nebraska with the highways of this State "to be of peculiar benefit to the said County and the inhabitants thereof," and the court further found, "that it would be desirable and in the best interest of said County, to provide for the financing of the construction of the said bridge as a toll bridge."

Section 7 of the order directed that all the revenues of the bridge should be deposited in the "Toll Bridge Revenue Fund." It then directed that the annual sum of $30,000 be transferred from the above fund to the "Toll Bridge Revenue Bond Interest and Sinking Fund," to be used only for the payment of the bonds and the interest thereon, and that the balance of the revenues be deposited in the "Toll Bridge Operation and Maintenance Fund," to be used only for the payment of the costs of maintaining, repairing and operating the bridge. In other words, this Section provided that if the revenues of the bridge do not amount to $30,000 per year, all revenues must be used to pay the debt.

Section 14 of the order provided that if the revenues were insufficient to pay both the annual payment of $30,000 into the sinking fund and the cost of the operation, maintenance and repairs of the bridge, then the County would pay the latter.

Section 17 requires that the tolls be sufficient both to pay the bonds and the interest thereon and to operate, maintain and repair the bridge, and sets out an initial schedule of tolls, while Section 19 of the order creates a statutory lien on the revenues of the bridge.

Section 22 of the order states that the order should not be construed to require the use of funds arising from taxes levied and collected by the county towards the maintenance or operation of the bridge.

The actual revenues of the bridge have not come up to expectations. None of the bonds have been called and no principal has been paid. In fact, the revenue is now insufficient to pay into the "Toll Bridge Revenue Bond Interest and Sinking Fund" the $30,000 annually. Therefore, if the order of the County Court is complied with, there is nothing left to pay the cost of the operation, maintenance and repairs of the bridge from the revenues of the bridge.

The respondent's contentions were upheld by the trial court in its declaratory judgment, which judgment declares that the order of the

County Court was lawful; that all the revenues of the bridge first must be applied to pay the interest and the retirement of the bonds; that only the excess of $30,000 annually of the bridge revenues could be used to pay the cost of the operation, maintenance and repairs of the bridge; and that since there was no excess, the expenses of the operation, maintenance and repairs could be paid from other funds of the County other than taxes levied and collected by the County. That is to say, these expenses could be paid from such fees as Liquor and Beer Licenses, Pool and Billiard Table Licenses, and fees from the following County officers: Circuit Clerk and Recorder, Prosecuting Attorney, County Clerk, and County Farm Produce Sales, which, in the year 1941, amounted to $10,898.41. This sum was approximately the same as the amounts collected from these sources in prior years.

The Court, also, declared that under Section 22, of the order of the County Court, the County could not be required to pay the cost of maintenance or operation of the bridge from funds arising from taxes levied and collected by the County, but did rule that this Section did not go so far as to preclude voluntary payments by the County.

There is no contention raised that these bonds or interest can be paid from any other source than the revenues derived from tolls collected from the use of the bridge. The sole question for our determination is: Did the County Court have authority to make the covenants with respect to such payments set out in the order?

██ "The county courts are not the general agents of the counties or of the state. Their powers are limited and defined by law. These statutes constitute their warrant of attorney. Whenever they step outside of and beyond this statutory authority their acts are void." Sturgeon v. Hampton, 88 Mo. 203, l. c. 213. Quoted with approval in the case of Morris et al. v. Karr et al., 342 Mo. 179, 114 S. W. (2d) 962, l. c. 964.

██ Both parties to this suit agree that counties, like other public corporations, "can exercise the following powers and no others: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation and the power is denied." Dillon on Municipal Corporations (3rd Ed.) Section 89. We have repeatedly approved this quotation. See State ex rel. Blue Springs v. McWilliams et al., 335 Mo. 816, 74 S. W. (2d) 363; State ex rel. City of Hannibal v. Smith, State Auditor, 335 Mo. 825, 74 S. W. (2d) 367.

██ With these principles of law in mind, we will proceed to examine the Bridge Act of the Extra Session of 1933-1934, now Sections 8547 to 8551, R. S. (Mo.) 1939. Section 8547, supra, authorizes

a county to construct and operate a bridge over rivers forming the boundary between this and other states. Atchison County was authorized to construct the bridge in question. There is no controversy about this Section.

The controversies involved in this case concern the proper interpretation of Section 8548, supra, which reads: "In order to secure funds for the purpose of acquiring, constructing, owning and operating, improving or extending, and maintaining toll bridges, and approaches thereto, all public agencies named in the preceding section may issue negotiable toll bridge revenue bonds and sell such bonds to the United States Government, or any authorized agency thereof, or other investor or investors. *In the event of the issuance and sale of bonds authorized by this act by a public agency, such agency shall charge a reasonable toll for the use of any such toll bridge, the amount of which toll shall be sufficient to pay the reasonable cost of maintaining, repairing and operating such bridge and to provide a sinking fund sufficient to amortize and repay any such loan, including interest and financing cost, on such dates and within such period of time as may be agreed upon between the borrower and the original purchaser of such revenue bonds, and said tolls shall be used for no other purpose;* and any public body which shall issue bonds under the provisions of this act is hereby authorized and required to make all necessary provisions for the payment of principal and interest on any such bonds by the fixing, collecting, segregating, and allocating of the tolls and other revenues received from the operation of said bridge or bridges. Such public agencies enumerated above may execute liens in proper form, pledging the revenue derived from the toll from such toll bridges or parts thereof which are constructed or acquired with funds borrowed as aforesaid, to the retirement of such bonds: Provided, however, that no revenue bonds or any liens securing such bonds shall be repaid in whole or in part from any funds arising from taxation, nor shall any such bonds or liens, given under authority of this act constitute a lien on any other property of any such public agency or a pledge of the credit of such agency; and provided further, that at such time when all moneys borrowed as aforesaid shall have been repaid, together with interest and charges thereon, no further toll shall be charged for the use of such bridges by the traveling public. Such bonds may be made negotiable, may bear interest not to exceed 6 per cent per annum, and may mature annually or semi-annually, and may be sold at such time and in such manner as the issuing authority may determine upon." (Italics ours.)

In construing this Section in the case of State ex rel. City of Hannibal v. Smith, supra, we said, "As we construe this section, it requires that the toll be charged sufficient to pay both the bonds and interest, and also the cost of maintaining, repairing and operating the bridge. It does not state whether the bonds and interest be paid

first or the cost of operating the bridge be paid before the bonds and interest are paid.''

When read in its entirety, this Section clearly contemplates that the toll bridge constructed under this act shall be self-sustaining, at least until the bonds are paid. The clause as to charging tolls requires that they shall be ''reasonable,'' but otherwise makes it mandatory that the toll for the use of the toll bridge shall be such as ''shall be sufficient to pay the reasonable cost of maintaining, repairing and operating such bridge and to provide a sinking fund sufficient to amortize and repay such loan, including interest . . . '' Thus, by the express words of the statute, the County is told from what funds the costs of maintaining, repairing and operating the toll bridge are to be paid.

That fund is from the tolls collected for using the bridge. In this instance, the County was directed in express words from what fund the operation and maintenance expenses are to be paid; therefore, they cannot be paid from any other. Where the statute (Section 8548) ''limits the doing of a particular thing in a prescribed manner, it necessarily includes in the power granted the negative that it cannot be otherwise done.'' Keane v. Strodtman, 323 Mo. 161, 18 S. W. (2d) 896. See, also, Dougherty v. Excelsior Springs, 110 Mo. App. 623, 85 S. W. 112; Taylor v. Dimmitt, 326 Mo. 330, 78 S. W. (2d) 841. In other words, there can never be an implied power given a county or other public corporation when there is an express power.

In the Hannibal Bridge case, supra, we did not rule this point as contended by respondent. In that, the City of Hannibal agreed that if the toll derived from the bridge was not sufficient to pay both the operating expenses and the bonds and interest, then that City would pay the operating expenses from other available funds. We did not pass on the validity of that provision, but did hold that it was a contingent liability and, therefore, Article 10, Section 12, of our Constitution was not violated.

Respondent, also, relies upon Trantner v. Allegheny County Authority, 316 Pa. 65, 173 Atl. 289, and California Toll Bridge Authority v. Kelly, 21 Pac. (2d) 425, 218 Cal. 7. In both of these cases, the statutes are totally different from our statute under review. In each instance, the operating expenses were expressly directed to be paid from other funds than the toll fund. Neither case sustains respondent's contention here.

Therefore, the provision of the order of the County Court which states that if the revenues of the bridge are insufficient to pay both the sinking fund and operating expenses, the County will pay the operating expenses out of other available funds, is void. We are not now interested or concerned as to how the operating expenses will be paid when the bonds are paid in full, and no more tolls will be

collected. That question can be passed on when it is properly presented to us.

If, due to reduction in traffic because of war or any other reasons, the tolls are insufficient to pay both the operating expenses and to create a sinking fund to redeem the bonds, then under Section 8548, supra, it becomes the duty of the County to take appropriate steps to increase the tolls until they are sufficient, subject to the limitation that the tolls must be reasonable.

From a practical standpoint, there can be no revenue from tolls unless the bridge is operated. Since the operating and repairing expenses of the bridge can be paid only from the revenues derived from the bridge, it necessarily follows that the operating expenses must be paid before any revenues from the bridge can be placed in the "Toll Bridge Revenue Bond Interest and Sinking Fund."

The judgment of the trial court is reversed and the cause remanded with directions for the trial court to enter a declaratory judgment in conformity with this opinion. All concur.