Dear Senator Nixon:
This opinion letter is in response to your questions asking:
 1. May Jefferson County disperse capital improvement sales tax receipts received from the state pursuant to Sections 67.700 to 67.727, RSMo 1986, directly to the cities under the formula approved by the voters and set forth in a contract between the cities and the county, with administration of the funds being the responsibility of the cities in accordance with the proposition passed by the voters and the law and without the county maintaining administrative control over the cities' expenditures of the funds?
 2. May the county impose any charge for its administrative costs in supervising cities' disbursement of capital improvement sales tax funds in light of Section 67.706, which provides that the director of revenue shall perform, "all functions incident to the administration, collection, enforcement and operation of the tax, . . .", and in the absence of statutory authority, for the county to charge the cities?
The following is a quotation from your opinion request which we set forth because it fully explains the background of the request:
Section 67.700, R.S.Mo. 1986, provides in pertinent part:
 1. Any county . . . may, by ordinance or order, impose a sales tax on all retail sales made in such county which are subject to taxation . . . for any capital improvement purpose designated by the county in its ballot of submission to its voters; provided, however, that no ordinance or order enacted pursuant to the authority granted by sections 67.700 to 67.727 shall be effective unless the governing body of the county submits to the voters of the county, . . . a proposal to authorize the governing body of the county to impose a tax under the provisions of sections 67.700
to 67.727.
* * *
 7. All revenue received by a county from the tax authorized by sections 67.700 to 67.727 which has been designated for a certain capital improvement purpose shall be deposited in a special trust fund and shall be used solely for such designated purpose. . . . Any funds in such special trust fund which are not needed for current expenditures may be invested by the governing body in accordance with applicable laws relating to the investment of other county funds.
Section 67.706, R.S.Mo. 1986, provides in pertinent part:
 On and after the effective date of any tax imposed under sections 67.700 to 67.727, the director of revenue shall perform all functions incident to the administration, collection, enforcement and operation of the tax, . . . .
Section 67.712, R.S.Mo. 1986, provides in pertinent part:
 1. All sales taxes collected by the director of revenue under sections 67.700
to 67.727 on behalf of any county, less one percent for the cost of collection, which shall be deposited in the state's general revenue fund after payment of premiums for surety bonds as provided in sections 67.700
to 67.727, shall be deposited with the state treasurer in a special trust fund, which is hereby created, to be known as the "County Alternate Sales Tax Trust Fund". . . . Not later than the tenth day of each month the state treasurer shall distribute all moneys deposited in the trust fund during the preceding month by distributing to the county treasurer, or such other officer as may be designated by the county ordinance or order, of each county imposing the tax authorized by sections 67.700 to 67.727, the sum, as certified by the director of revenue, due the county.
Section 67.727, R.S.Mo. 1986, provides in pertinent part:
 2. Any county imposing a sales tax pursuant to the provisions of sections 67.700 to 67.727 may contract with any other county or with any city for the construction, maintenance, or utilization of any facility or project funded in whole or in part from revenues derived from the tax levied pursuant to the provisions of sections 67.700 to 67.727.
On February 3, 1986, the County Commission of Jefferson County, Missouri, adopted an Ordinance and Court Order calling an election to be held on Tuesday, April 1, 1986, to submit to the voters of Jefferson County the proposition of whether or not a sales tax of one-half of one percent for a fifteen year time period should be collected for "capital improvements to the roads of Jefferson County, Missouri, including its Cities under a formula." And the submission was ordered to be:
 Shall the County of Jefferson impose a Countywide sales tax at the rate of one-half of one percent (1/2 of 1%) for a period of fifteen years from the date on which such tax is first imposed for the purpose of capital improvements to the publicly maintained roads of both the unincorporated and incorporated areas of Jefferson County based upon a population and mileage formula?
On April 10, 1986, the County Commission entered an Order entitled:
 ORDER RECEIVING CERTIFICATION OF ELECTION RESULTS AS TO ROAD IMPROVEMENT SALES TAX; IMPOSING COUNTYWIDE SALES TAX FOR THE PURPOSE OF CAPITAL IMPROVEMENTS TO PUBLIC MAINTAINED ROADS; PROVIDING FOR ALLOCATION OF RECEIPTS OF SUCH TAX BETWEEN THE UNINCORPORATED AND INCORPORATED AREAS OF JEFFERSON COUNTY BASED UPON A FORMULA OF POPULATION AND ROAD MILEAGE: ACKNOWLEDGING WHEN SUCH TAX SHALL BE COLLECTED: PROVIDING FOR NOTIFICATION OF THE DEPARTMENT OF REVENUE OF STATE OF MISSOURI AND PROVIDING FOR THE EFFECTIVE DATE OF THIS ORDINANCE.
The Order provided in pertinent part:
 SECTION 1. The County Commission does acknowledge that on April 1, 1986, the voters of Jefferson County, Missouri, did adopt proposition as follows: "Shall the County of Jefferson impose a countywide sales tax at the rate of one-half of one percent (1/2 of 1%) for a period of fifteen years from the date on which such tax is first imposed for the purpose of capital improvements to the publicly maintained roads of both the unincorporated and incorporated areas of Jefferson County based upon a population and mileage formula?" The County Commission does acknowledge receipt of the certification of election results by the verification board from such election and does acknowledge and declare that the proposition has been approved by the electorate of Jefferson County, Missouri.
 SECTION 2. In accordance with the voter authorization received and as provided for in Section 67.700 R.S.Mo., County Commission of Jefferson County, Missouri, does hereby ORDER that a countywide sales tax at the rate of one-half of one percent (1/2 of 1%) for a period of fifteen (15) years from and after July 1, 1986, or as soon thereafter as may be possible and no later than October 1, 1986, be and is hereby imposed for the purpose of capital improvements to the publicly maintained roads of Jefferson County, Missouri.
 SECTION 3. It is provided that said tax revenue obtained from such sales tax shall be allocated between the unincorporated and incorporated areas of Jefferson County, Missouri, based upon a proportional population and mileage formula between such political entities.
 SECTION 4. The County Commission of Jefferson County, Missouri, does find that such sales tax as provided for in Section 67.700 R.S.Mo. Subsection 4 shall be collected commencing July 1, 1986, or no later than October 1, 1986, and does ORDER that such tax be collected commencing upon said date.
The Jefferson County Commission is seeking contracts with respect to the capital improvement sales tax with all cities located within Jefferson County, said cities being the governmental subdivisions that are responsible for construction and maintenance of public roads within the cities. One of the provisions of the proposed contract establishes the revenue sharing formula as follows: . . . No dispute exists between the cities and the County with respect to the formula for the sharing of the capital improvement sales tax.
As a part of the contract with the cities the County Commission is attempting to impose various regulations with respect to administration of the capital improvement sales tax. Included in those regulations are definitions of what constitutes capital improvements; requirements that the cities submit to the County Commission certain requests with respect to planned capital improvements which the cities propose to make utilizing the tax; requiring that the County Commission approve all city proposed projects before the projects would be eligible for funding by the capital improvement sales tax; requiring reviews of city proposed contracts by the County Highway Engineer for the purpose of ascertaining whether proposed capital improvements are eligible for reimbursement or direct payment; and provisions for withholding from cities the payment of capital improvement sales tax funds unless cities comply with all regulations of the County.
The County Commission is proposing a contract which imposes upon the cities a share of the cost of the County Commission's administration each year equal to three percent of the total revenue collected by the city in that year.
Certain cities within Jefferson County have challenged the authority of the County Commission to impose administrative regulations and requirements upon the cities; challenged the County's authority to withhold capital improvement sales tax due the city under the formula established pursuant to the proposition approved by the voters until such time as the city complies with certain rules and regulations; and challenging the County Commission's right to impose upon the cities any share of the County's proposed cost of administration and particularly the amount of three percent. It is the cities' positions that the County Treasurer be required to disperse each cities' share of the capital improvement sales tax to each city and that each city be contractually bound to comply with the law with respect to the purposes for which such sales tax can be expended; and, of course, be subject to all usual public audit procedures to verify city compliance with the law.
The County has asserted that it has some legal responsibility to see that the funds are expended by cities only for the purposes authorized by the law, and therefore it must impose its administrative requirements and its requirements that it approve all projects and payments. The County Commission has no objection to passing the capital improvement sales tax receipts directly through to the cities without imposing administrative requirements and without deduction for any administrative costs if it can legally do so.
Question No. 1
 1. May Jefferson County disperse capital improvement sales tax receipts received from the state pursuant to Sections 67.700 to 67.727, RSMo 1986, directly to the cities under the formula approved by the voters and set forth in a contract between the cities and the county, with administration of the funds being the responsibility of the cities in accordance with the proposition passed by the voters and the law and without the county maintaining administrative control over the cities' expenditures of the funds?
It is clear from the text of the ballot and from the County Commission's order of April 10, 1986, that the voters in the county contemplated that the sales tax revenues would be used on roads located within incorporated areas as well as those in unincorporated areas.[1] As a general rule, without specific statutory authority, a county commission is not allowed to grant or expend county funds to or on another political subdivision.See Attorney General Opinion Letter No. 8-84; Attorney General Opinion No. 63, Moore, March 27, 1957; and Attorney General Opinion No. 21, Dale, July 8, 1954. However, county funds can be expended on roads in special road districts and on city streets which form a part of the county network of roads. See
Attorney General Opinion No. 36, Parish, January 18, 1968, at page 4.
Sections 70.210 through 70.320, RSMo 1986, allow for cooperative contracts between political subdivisions. Section70.220 provides in part:
 70.220. Political subdivisions may cooperate with each other, with other states, the United States or private persons. — Any municipality or political subdivision of this state, as herein defined, may contract and cooperate with any other municipality or political subdivision, or with an elective or appointive official thereof, or with a duly authorized agency of the United States, or of this state, or with other states or their municipalities or political subdivisions, or with any private person, firm, association or corporation, for the planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service; provided, that the subject and purposes of any such contract or cooperative action made and entered into by such municipality or political subdivision shall be within the scope of the powers of such municipality or political subdivision.. . .
(Emphasis added.) See also Article VI, Section 16 of the Missouri Constitution. Subsection 2 of Section 67.727 provides:
 2. Any county imposing a sales tax pursuant to the provisions of sections 67.700 to 67.727 may contract with any other county or with any city for the construction, maintenance, or utilization of any facility or project funded in whole or in part from revenues derived from the tax levied pursuant to the provisions of sections 67.700 to 67.727.
Under Section 70.220, it is required that the subject and purposes of any contract or cooperative action made and entered into by a political subdivision be within the scope of the powers of the political subdivision. Therefore, the county is authorized to enter into a contract with the cities involved to expend funds from the sales tax in question for purposes which the county is authorized to expend the funds.
The form of the cooperative contract is a matter to be resolved by the County Commission and the cities involved. At a minimum, the contracts must clearly indicate the purpose for which the monies may be spent which purpose must be a purpose for which the county is authorized to spend the monies as well as a purpose delineated in Sections 67.700 and 67.727, the ballot text and the County Commission order of April 10, 1986. The contracts should also set forth the population and mileage formula. Beyond that, it is up to the discretion of the County Commission to determine how much administrative control the Commission should exercise in order to assure itself that the monies are being spent for the purposes for which they were intended by the voters. It is impossible to say in the abstract how much administrative control the Commission should include in the contracts. This really depends on the Commission's judgment, based on advice from its legal counsel and its past experiences. The administrative controls which you described in your request, as quoted above, are certainly those type which would be permissible in a contract of this nature. If the county thought these were appropriate under the circumstances and a city did not like the controls, then the city would not have to sign the contract. Of course, such city would not receive monies from the sales tax in question.
Therefore, in answer to your question, Jefferson County in contracting with cities within that county regarding the expenditure of the capital improvements sales tax has discretion to determine how much administrative control the County Commission should exercise in order to assure itself that the monies are being spent for proper purposes.
Question No. 2
 2. May the county impose any charge for its administrative costs in supervising cities' disbursement of capital improvement sales tax funds in light of Section 67.706, which provides that the director of revenue shall perform, "all functions incident to the administration, collection, enforcement and operation of the tax, . . .", and in the absence of statutory authority, for the county to charge the cities?
It is well established in Missouri that counties, like other public corporations, can exercise only powers granted them by statutes in express words, those necessarily or fairly implied in or incident to powers expressly granted, and those essential or indispensable to declared objectives. Lancasterv. County of Atchison, 352 Mo. 1039, 180 S.W.2d 706, 708
(1944). Furthermore, when the legislature intends to allow a governmental entity, such as the Director of Revenue or a County Commission, to be paid a sum for administrative work relating to the handling of tax revenues, it does so explicitly. See forexample, Section 67.680.1, RSMo 1986: "All tourism sales taxes under sections 67.671 to 67.685 collected by the county collector, less one percent for cost of collection which shall be deposited in the county's general revenue fund after payment of premiums for surety bonds required by subsection 4 of this section, shall be deposited with the county treasurer in a special trust fund, which is hereby created, to be known as the `County Advertising and Tourism Promotion Trust Fund'. . . ." (emphasis added), and Section 67.712.1 involving the Director of Revenue's handling of the tax revenues involved in this opinion request: "All sales taxes collected by the director of revenue under sections 67.700 to 67.727 on behalf of any county, lessone percent for the cost of collection, which shall be deposited in the state's general revenue fund after payment of premiums for surety bonds as provided in sections 67.700 to67.727, shall be deposited with the state treasurer in a special trust fund, which is hereby created, to be known as the `County Alternate Sales Tax Trust Fund' . . . ." (Emphasis added.) Seealso Sections 67.525.1, 67.570.1, 67.594.1, 67.595, and 67.729, RSMo 1986.
Section 50.515, RSMo 1986, allows a county to impose an administrative service fee on the county park fund or the county road and bridge fund or both such funds. Such fee is limited to a maximum of three percent (3%) of the total budget of the fund on which such fee is imposed. The fee is to be imposed at a rate which will only generate revenue sufficient to recoup actual expenditures made from the general revenue fund of the county to provide administrative services to the fund against which such service fee is imposed. Section 50.515 does not include the special trust fund for the capital improvements sales tax as a fund against which the three percent (3%) administrative fee may be imposed. When statutes enumerate the things or subjects on which they are to operate, they are to be taken as excluding from their effect all subjects and things not expressly mentioned. DePoortere v. Commercial Credit Corporation,500 S.W.2d 724, 727 (Mo.App. 1973).
Subsection 7 of Section 67.700 provides that all revenues received by a county from the tax authorized by Sections 67.700
to 67.727 which has been designated for a certain capital improvement purpose shall be deposited in a special trust fund and shall be used solely for such designated purpose. In the absence of any statute authorizing the county to divert such monies from the designated purpose by imposing an administrative charge, we conclude the county may not impose such an administrative charge.
In summary, it is the opinion of this office that Jefferson County, in contracting with cities within that county regarding the expenditure of the capital improvements sales tax, has discretion to determine how much administrative control the County Commission should exercise in order to assure itself that the monies are being spent for proper purposes and that Jefferson County has no authority to impose an administrative charge of three percent (3%) on the monies received from the capital improvements sales tax.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
Enclosures:
 Attorney General Letter No. 8-84 Attorney General Opinion No. 63, Moore, March 27, 1957 Attorney General Opinion No. 21, Dale, July 8, 1954 Attorney General Opinion No. 36, Parish, January 18, 1968
[1] The text of the ballot which you have provided demonstrates that while the voters did approve distribution of funds by means of a formula involving the factors of population and mileage, there was no approval of any specific formula or of numbers to be used in the formula. Therefore, there is no specific formula which has been "approved by the voters". In addition, we do not address the propriety of the wording of the proposition submitted to the voters.