The Honorable Chuck Pryor Representative, District 116 State Capitol Building Jefferson City, Missouri 65101
Dear Representative Pryor:
This opinion is in response to your questions regarding the effects of reclassification of a county on the combined offices of circuit clerk and ex officio recorder. You asked:
 1. When a county of the second class, whose circuit clerk and recorder of deeds is one official, becomes a county of the first class, should the county separate those two offices?
 2. If so, should it be done by the action of the county commission or by a vote of the people?
In your opinion request, you noted that the county of interest is Camden County. Camden County was a third-class county until some time after 1987, when it became a second-class county. It currently remains a second-class county but effective January 1, 1997, will become a first-class county.
Section 59.090[1] requires fourth-class counties to have their circuit clerks serve as ex officio recorders. Third-class counties have the option of combining or separating the offices, that decision to be made by the voters of the county. Section59.040. We can find no provision generally allowing first or second-class counties to combine the offices. In fact, §59.020 provides that first and second-class counties shall elect their recorders; § 483.015 provides with some exceptions that all circuit clerks are to be elected. However, § 59.041
provides:
 Notwithstanding the provisions of this chapter or chapter 478, RSMo, or any other provision of law in conflict with the provisions of this section, in any county which becomes a county of the second class after September 28, 1987, and wherein the offices of circuit clerk and recorder of deeds are combined, such combination shall continue until the voters of the county authorize the separation of offices as provided in section 59.040.1. [Emphasis added.]
This provision currently applies to Camden County, and explains why the circuit clerk is also the ex officio recorder.
"Where language of a statute is clear, courts must give effect to the language as written." Kearney Special RoadDistrict v. County of Clay, 863 S.W.2d 841, 842 (Mo. banc 1993). "Where no ambiguity exists, there is no room for construction."Lough by Lough v. Rolla Women's Clinic, Inc., 866 S.W.2d 851, 855
(Mo. banc 1993). If there is ambiguity, and resort to construction is needed, the primary rule in construing a statute is to ascertain the legislature's intent from the language used and, if possible, to give effect to that intent. Maudlin v. Lang,867 S.W.2d 514, 516 (Mo. banc 1993) (citing Magee v. Blue RidgeProfessional Building Co., 821 S.W.2d 839, 843 (Mo. banc 1991)). In determining that intent, we look to the words used, their context, and the problem the legislature sought to correct via the enactment. Wilson v. Director of Revenue, 873 S.W.2d 328, 329
(Mo.App., E.D. 1994).
We must also be mindful of the well-settled principle of law that a county can exercise only those powers granted to it in express words, those necessarily or fairly implied in or incident to the powers expressly granted, and those essential — not simply convenient, but indispensable — to the declared objects and purposes of the county. Lancaster v. County ofAtchison, 180 S.W.2d 706, 708 (Mo. banc 1944); American AberdeenAngus v. Stanton, 762 S.W.2d 501, 503 (Mo.App., W.D. 1988) (citing Lancaster). Any fair, reasonable doubt concerning the existence of power must be resolved against the county, and the power should be denied. Id. We must presume that the legislature was aware of this rule of law when it enacted Section 59.041.Nicolai v. City of St. Louis, 762 S.W.2d 423, 426 (Mo. banc 1988).
We believe the legislature evidenced its intent in Chapter 59 that smaller counties combine the offices of recorder and circuit clerk and that larger counties elect separate officers for those offices. Consistent with that intent, we read the above-emphasized part of § 59.041 to apply only to second-class counties which become so after September 28, 1987. We do not read the statute to authorize continued jointly held offices in what are now first-class counties, even if those counties had become second-class counties after September 28, 1987. Consequently, Camden County must have separate office holders for those county offices when it becomes a first-class county.
While action to separate the two offices is necessary in a third-class county under § 59.040 (county voter option to combine or separate offices), and action is required under §59.041 (county voter approval required to separate offices in certain second-class counties), it is our opinion that no county action is needed to separate the offices when and if Camden County becomes a first-class county. The separation will occur automatically as a matter of law.
This conclusion is consistent with prior Attorney General opinions regarding the effects of reclassification on county powers and restrictions. In Opinion No. 72, Pratt, February 16, 1955, this office opined on the issue. There, any sheriff of a third-class county also served as the county's assistant probation officer. There was no such provision for second-class counties. The question was what happened to the sheriff's duties as assistant probation officer when the county was reclassified from third-class to second-class. This office opined that when the reclassification took place, the sheriff would no longer be required to act as assistant probation officer or to receive compensation for those duties. This was so even though the sheriff's term would not expire until after the reclassification. Thus, the sheriff automatically ceased serving as the assistant probation officer as of the date of reclassification.
In Opinion No. 17, Whitcraft, 1972, this office addressed another reclassification issue. There the question was whether the "township" organization form of government, which was authorized for only third and fourth-class counties, automatically ceased to exist when a third-class county became a second-class county. This office opined that the township organization would automatically cease upon reclassification and that no action was required of the county.
Based on our opinion that the separation of offices will occur automatically, it is unnecessary to address your second question, asking whether separation of the two offices should be done by the county commission or by a vote of the people.
Upon reclassification effective January 1, 1997, Camden County will have a separate office of recorder. Section 48.050
governs the effect of county reclassification on county officials and provides:
 . . . Any office which may be established as a result of the change of the county from one class to another shall be filled in accordance with the provisions of the law relating to the filling of vacancies for such office.
Section 105.030 provides that the governor must fill any vacancy of any county office "originally filled by election of the people." Article IV, § 4, Mo. Const. (1945), provides that the Governor must fill any vacancy in public office unless "otherwise provided by law." Therefore, whether the county's reclassification creates a new office or creates a vacancy in an existing office, the Governor must fill the office by appointment.
CONCLUSION
It is the opinion of this office that when a second-class county which has combined offices of circuit clerk and recorder is reclassified as a first-class county, the combined offices separate automatically by operation of law.
Very truly yours,
 JEREMIAH W. (JAY) NIXON Attorney General
Enclosures
[1] All statutory references, unless otherwise noted, are to the 1994 Revised Statutes of Missouri (RSMo).