

# SUPREME COURT OF MISSOURI
## en banc

CEDAR COUNTY COMMISSION,  )  *Opinion issued March 21, 2023*
ET AL.,  )
  )
         Appellants,  )
  )
v.  )    No. SC99488
  )
GOVERNOR MICHAEL PARSON,  )
ET AL.,  )
  )
         Respondents.  )

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Daniel R. Green, Judge

Appellants[1] brought several challenges to the validity of section 192.300.1[2] and its effect on local county ordinances regulating controlled animal feeding operations ("CAFOs"). The circuit court rejected all of these challenges and granted summary judgment in Respondents' favor.[3] Appellants appeal, and this Court has jurisdiction

---

[1] The original Relators (now Appellants) consisted of the Cedar County Commission, the Cooper County Public Health Center, Friends of Responsible Agriculture, Inc., Jefferson Jones, Susan Williams, and Fred Williams. Later, Wanda Cassell intervened and was added as a party. The term "Appellants" as used throughout this opinion refers to these parties.

[2] All statutory references are to RSMo Supp. 2021, unless otherwise noted.

[3] The original Respondents consisted of Governor Michael Parson, Gary Pendergrass (as chair of the Missouri Air Conservation Commission), Ashley McCarty (as chair of the Missouri Clean Water Commission), Missouri Pork Association, Missouri Cattlemens' Association, and the

pursuant to article V, section 3 of the Missouri Constitution. The circuit court's judgment is affirmed.

## Background

In May 2016, Appellant Cedar County Commission ("Cedar County") adopted a public health ordinance regulating CAFOs. It enacted this ordinance pursuant to section 192.300, which authorized counties to enact public health ordinances, so long as those ordinances were not "in conflict with any rules or regulations authorized and made by the department of health and senior services … or by the department of social services." § 192.300, RSMo 2016.

In May 2019, the General Assembly amended section 192.300 in Senate Bill No. 391 (2019) ("SB 391"). This amendment reorganized and added multiple subsections to section 192.300. Among the changes was the addition of section 192.300.1(2), which prevented counties from enacting public health ordinances that "impose standards or requirements on an agricultural operation and its appurtenances … that are *inconsistent with or more stringent than* any provision of [chapter 192] or chapters 260, 640, 643, and 644, or any rule or regulation promulgated under such chapters." § 192.300.1(2), RSMo Supp. 2019 (emphasis added).

---

Missouri Farm Bureau. Missouri Pork Association, Missouri Cattlemens' Association, and the Missouri Farm Bureau have since been dismissed as parties to this litigation. Additionally, Pendergrass has been replaced by Richard Rocha as chair of the Missouri Air Conservation Commission. Finally, Paula Nickelson (acting Director of the Missouri Department of Health and Senior Services) was added as a party after the commencement of this litigation. The term "Respondents" as used throughout this opinion encompasses these remaining parties.

2

On August 13, 2019 – two weeks before SB 391's effective date – Appellant Cooper County Public Health Center ("Public Health Center") enacted Public Health Center Regulation 2019-6 ("Regulation 6"), which imposed air and water quality standards on CAFOs within Cooper County. Six days later, Appellants filed the present action in the circuit court, seeking an injunction preventing the enforcement of section 192.300.1(2) to the extent it would invalidate Regulation 6.

In May 2021, while this matter was still pending in the circuit court, the the General Assembly passed House Bill No. 271 (2021) ("HB 271"), which once again amended the language of section 192.300. This time, section 192.300.1(2) was amended to prevent counties from enacting public health ordinances that "impose standards or requirements on an agricultural operation and its appurtenances … that are ***inconsistent with, in addition to, different from, or more stringent than*** any provision of [chapter 192] or chapters 260, 640, 643, or 644, or any rule or regulation promulgated under such chapters." § 192.300.1(2) (emphasis added).

After the passage of HB 271, Appellants filed their Third Amended Petition in the present action, seeking: (1) a declaration that HB 271's amendments to section 192.300 are unconstitutional; (2) a permanent injunction prohibiting the implementation and enforcement of HB 271's amendments to section 192.300; and (3) an award of Appellants' reasonable attorney fees and costs. The parties filed competing motions for summary judgment and, in December 2021, the circuit court sustained Respondents' motion and entered judgment in Respondents' favor. Appellants timely appealed the circuit court's judgment to this Court.

**Analysis**

Appellants argue the circuit court erred in granting summary judgment for Respondents because the amended section 192.300 (1) conflicts with article I, section 35 of the Missouri Constitution (i.e., the "Right-to-Farm Amendment"); (2) does not apply to Cedar County or the Public Health Center's ordinances because it contains no language evidencing a clear legislative intent to apply retroactively; and (3) does not preempt Regulation 6.[4]  Additionally, Appellants claim HB 271 – which added the "in addition to, different from" language to section 192.300.1(2) – is unconstitutional because it violates various provisions of article III of the Missouri Constitution.

**I.      Conflict with the Right-to-Farm Amendment**

"This Court reviews challenges to the constitutional validity of a statute *de novo*." *City of Maryland Heights v. State*, 638 S.W.3d 895, 898 (Mo. banc 2022) (internal quotation marks omitted).  "The person challenging the statute's validity bears the burden of proving the act clearly and undoubtedly violates the constitution."  *Id.* (internal quotation marks omitted).  Therefore, Appellants bore the burden of proving HB 271's amendments to section 192.300 violate the Missouri Constitution.  *City of De Soto v. Parson*, 625 S.W.3d 412, 415-16 (Mo. banc 2021).

However, because Respondents moved for summary judgment, they bore the burden to "demonstrate[], on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law."  *ITT Commercial Fin. Corp v. Mid-Am. Marine*

---

[4]  Originally, Appellants claimed section 192.300 violates the due process provisions of the Missouri and United States constitutions.  They have since abandoned that point.

4

*Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). In other words, Respondents assumed the burden to show with undisputed facts that Appellants could not establish the amended section 192.300 was unconstitutional. *City of De Soto*, 625 S.W.3d at 416.

Appellants argue that the amended section 192.300.1 conflicts with the Right-to-Farm Amendment's reservation of authority to counties to regulate agriculture. Specifically, they argue section 192.300.1(2) conflicts with county commissions' and county health boards' duly authorized powers to "manage all county business as prescribed by law" pursuant to article VI, section 7 of the Missouri Constitution. The circuit court did not err in rejecting these claims.

The Right-to-Farm Amendment states, in pertinent part:

That agriculture which provides food, energy, health benefits, and security is the foundation and stabilizing force of Missouri's economy. To protect this vital sector of Missouri's economy, the right of farmers and ranchers to engage in farming and ranching practices shall be forever guaranteed in this state, ***subject to the duly authorized powers, if any, conferred by article VI of the Constitution of Missouri***.

Mo. Const. art. I, sec. 35 (emphasis added).

Even though the Right-to-Farm Amendment expressly subordinates the rights contained within it to counties' duly authorized powers under article VI, it can hardly be said that this language somehow renders section 192.300.1 unconstitutional. Article VI, section 7 gives county commissions the power to "manage all county business ***as prescribed by law***." Mo. Const. art. VI, sec. 7 (emphasis added). Accordingly, counties "have no inherent powers but are confined to those expressly delegated by the sovereign and to those powers necessarily implied in the authority to carry out the delegated

5

powers." *Christian Cnty. v. Edward D. Jones & Co.*, 200 S.W.3d 524, 527 (Mo. banc 2006) (internal quotation marks omitted).

Under the version of section 192.300 in effect in 2016, the legislature "saw fit to delegate to county commissions … power to promulgate public-health rules and ordinances." *Vimont v. Christian Cnty. Health Dep't*, 502 S.W.3d 718, 720 (Mo. App. 2016). By adopting the amendments to section 192.300 enacted first in SB 391 and, later, in HB 271, the General Assembly circumscribed that power, as it had every right to do. *Lancaster v. Cnty. of Atchison*, 180 S.W.2d 706, 708 (Mo. banc 1944) ("The county courts[5] are not the general agents of the counties or of the state. Their powers are limited and defined by law." (internal quotation marks omitted)).

It cannot be said that the amended section 192.300 violates the Right-to-Farm Amendment by conflicting with the counties' article VI powers because those powers are only as broad or as narrow as the General Assembly wants them to be. Appellants, therefore, failed to show the amended section 192.300 clearly and undoubtedly violates the Right-to-Farm Amendment. Summary judgment in favor of Respondents on this point was proper.

## II.    Procedural Challenges under Article III

Appellants' Point Relied On V in their substitute brief asserts two (or perhaps three)[6] separate and independent challenges to HB 271 under article III of the Missouri

---

5   County commissions were formerly known as county courts. *See* § 49.010; *see also Am. Aberdeen Angus v. Stanton*, 762 S.W.2d 501, 502 (Mo. App. 1988).

6   Specifically, Point V claims HB 271 "was enacted in violation of the clear title and single subject prohibitions in article III, sections 21 and 23 in the Missouri Constitution." The clear

Constitution.  As a result, this point is multifarious and, for that reason, fails to comply with Rule 84.04.  Improper points preserve nothing for review, and the Court may choose not to respond to them.  On the other hand, this Court has the discretion to review deficient points *ex gratia*.  *Lexow v. Boeing Co.*, 643 S.W.3d 501, 508 (Mo. banc 2022). When the point is multifarious, such *ex gratia* review can be limited to one of the improperly combined points, often the first one.  *See Griffitts v. Old Republic Ins. Co.*, 550 S.W.3d 474, 478 (Mo banc. 2018) (electing to review the first claim of error in a multifarious point relied on); *Spence v. BNSF Ry. Co.*, 547 S.W.3d 769, 779 (Mo. banc 2018) (electing to do the same).  Here, too, in the exercise of its discretion, the Court elects to review the first claim of error in Appellants' multifarious point, i.e., that HB 271 violates the clear title requirement of article III, section 23.

"Constitutional attacks based upon the procedural limitations contained in article III, sections 21 and 23 are not favored."  *Calzone v. Interim Comm'r of Dep't of Elementary & Secondary Educ.*, 584 S.W.3d 310, 315 (Mo. banc 2019) (quoting *Stroh Brewery Co. v. State*, 954 S.W.2d 323, 326 (Mo. banc 1997) (internal quotation marks omitted)).  "The purpose of the clear title requirement is to keep legislators and the public

---

title and single subject requirements are located within article III, section 23.  Article III, section 21, contains the original purpose requirement, which states that "no bill shall be so amended in its passage through either house as to change its original purpose."  In reviewing Appellants' argument, it appears to claim a violation of all three requirements, though only two are set forth in the Point itself.  Whether Appellants are raising two arguments under article III (as set forth in the Point) or three (as set forth in the argument), these are separate and distinct claims that cannot be combined in a single point.  Therefore, Appellants' Point V violates Rule 84.04(d) because "it groups together multiple, independent claims rather than a single claim of error." *Kirk v. State*, 520 S.W.3d 443, 450 n.3 (Mo. banc 2017).  "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review."  *Id.*

fairly apprised of the subject matter of pending laws." *Trenton Farms RE, LLC v. Hickory Neighbors United, Inc.*, 603 S.W.3d 286, 295 (Mo. banc 2020) (quoting *State v. Salter*, 250 S.W.3d 705, 709 (Mo. banc 2008) (internal quotation marks omitted)). The clear title requirement is violated "when the [final] title [of the passed bill] is underinclusive or too broad and amorphous to be meaningful." *Id*.

Here, Appellants claim the final title of HB 271 is too broad. In pertinent part, the title of HB 271 identifies the bill as: "An Act … relating to local government, with penalty provisions and an emergency clause for certain sections."[7] The only instances in which this Court has struck down a bill for having too broad of a title "are those in which the title could describe the majority of all the legislation that the General Assembly passes." *Salter*, 250 S.W.3d at 709. This is not because broad titles themselves are taboo, but because a title so broad as to describe all or nearly all the legislation considered by the General Assembly in a given session provides no notice to interested legislators or citizens regarding the bill's contents.

Accordingly, the question is not whether HB 271's title "relating to local government" is broad. It plainly is. Rather, the question is whether this title is so broad that it fails to provide clear notice to legislators or interested citizens as to the bill's

---

[7] The full title of HB 271, as truly agreed and finally passed, identifies the bill as: "An [a]ct [t]o repeal sections 49.310, 50.166, 50.327, 50.530, 50.660, 50.783, 59.021, 59.100, 67.398, 67.990, 67.993, 67.1153, 67.1158, 82.390, 84.400, 91.025, 91.450, 115.127, 115.646, 137.280, 139.100, 192.300, 204.569, 221.105, 386.800, 393.106, 394.020, 394.315, 407.300, 451.040, 476.083, 485.060, 488.2235, and 570.030, RSMo, and section 49.266 as enacted by senate bill no. 672, ninety-seventh general assembly, second regular session, and section 49.266 as enacted by house bill no. 28, ninety-seventh general assembly, first regular session, and to enact in lieu thereof fifty-one new sections relating to local government, with penalty provisions and an emergency clause for certain sections."

8

contents.  It is not.  Suppose, for example, a legislator or citizen was interested in tracking potential legislation that might limit local government's authority to regulate CAFOs. The title of HB 271 is sufficiently clear to give such a person notice that they may want to examine its contents and track its progress.  On the other hand, a bill with a title so broad that it encompasses practically every subject on which the General Assembly might legislate provides no clear notice to legislators and interested citizens as to what might – and might not – be included in that bill.  The circuit court did not err in rejecting Appellants' clear title challenge.  *See Salter*, 250 S.W.3d at 710 (noting this Court has rejected challenges to broad titles such as "general not for profit corporations," "health services," and "workers' compensation," among others, because even such broad titles gave sufficiently clear notice to alert a legislator or interested citizen as to the subjects that may be addressed in the bill).

## III.    Retroactivity

Appellants claim the 2019 and 2021 amendments to section 192.300 "do not operate retroactively" and, therefore, cannot invalidate ordinances adopted prior to those amendments.  In support of this claim, Appellants cite *Department of Social Services v. Villa Capri Homes, Inc.*, 684 S.W.2d 327, 332 (Mo. banc 1985), and *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 34 (Mo. banc 1982), for the proposition that statutes are presumed to apply prospectively absent express language indicating an intent for retroactive application.  Applying this presumption, Appellants argue the 2019 and 2021 changes to section 192.300.1 apply only to ordinances adopted after those amendments took effect.  This is incorrect.

9

Appellants are correct that statutes are presumed to operate prospectively "unless the legislative intent that they be given retroactive operation clearly appears from the express language of the act or by necessary or unavoidable implication." *Lincoln Credit Co.*, 636 S.W.2d at 34 (citing *St. Louis Cnty. v. Univ. City*, 491 S.W.2d 497, 499 (Mo. banc 1973)). But, unlike retrospective laws, there is no constitutional prohibition against statutes having retroactive application. The two concepts are different. "A law is ***retroactive*** in its operation when it looks or acts backward from its effective date[.]" *State ex rel. Meyer v. Cobb*, 467 S.W.2d 854, 856 (Mo. 1971) (emphasis added). "A law is ***retrospective*** in operation if it takes away or impairs vested or substantial rights acquired under existing laws ***or*** imposes new obligations, duties, or disabilities with respect to past transactions." *Hess v. Chase Manhattan Bank*, 220 S.W.3d 758, 769 (Mo. banc 2007) (emphasis added and omitted).

Retroactivity is a matter of statutory construction, i.e., retroactive application must be compelled by or necessarily inferred from the language of the statute. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 872 (Mo. banc 1993). Retrospectivity is a substantive limitation on the General Assembly's authority to enact laws, i.e., the Missouri Constitution forbids the General Assembly from enacting retrospective laws. *Lincoln Credit Co.*, 636 S.W.2d at 34-35 (citing Mo. Const. art. I, sec. 13).[8]

---

[8] At issue in *Villa Capri Homes* was the application of a state regulation setting Medicaid reimbursement rates for nursing home services to costs incurred before the regulation's effective date. 684 S.W.2d at 330-333. This Court held the regulation *could* be applied to costs incurred before the regulation's effective date because the regulation: (1) evidenced an intent to apply retroactively; and (2) was not unconstitutionally retrospective because it did not impair any vested civil rights of the relevant nursing homes in that the homes provided services at a time

Appellants do not claim the amendments to section 192.300.1 are impermissible retrospective laws. Instead, they claim nothing in the statute evidences a clear and unmistakable intent for it to be applied retroactively and, therefore, those amendments cannot invalidate ordinances adopted before the amendments were passed. This is incorrect.

Counties "may only exercise powers (1) granted to them in express words by the state, (2) those necessarily and fairly implied in or incident to those powers expressly granted, and (3) those essential and indispensable to the declared objectives and purposes of the county." *Borron v. Farrenkopf*, 5 S.W.3d 618, 620 (Mo. App. 1999) (citing *Premium Standard Farms v. Lincoln Twp. of Putnam*, 946 S.W.2d 234, 238 (Mo. banc 1997); *Lancaster*, 180 S.W.2d at 709). These powers "must be exercised in a manner not contrary to the public policy of the state and any provisions ***in conflict with prior or subsequent state statutes must yield***." *Morrow v. City of Kan. City*, 788 S.W.2d 278, 281 (Mo. banc 1990) (emphasis added). "Consequently, when a local government steps out of these boundaries, or the state expressly prohibits them from acting, their acts are void." *Borron*, 5 S.W.3d at 620 (citing *Premium Standard*, 946 S.W.2d at 238; *Lancaster*, 180 S.W.2d at 708).

---

they knew rates were not guaranteed. *Id.* at 332-33. Conversely, at issue in *Lincoln Credit Co.* was the application of section 408.096, RSMo Supp. 1979 – which prohibited lenders from charging fees for certain small personal loans – to preexisting contracts for such loans. 636 S.W.2d at 33-35. This Court held the statute *could not* be applied to invalidate preexisting loan contracts charging such a fee for small personal loans because (1) there was no express language in the statute indicating an intent for it to apply retroactively, and (2) such application would render the law unconstitutionally retrospective because it would impair a vested civil right (i.e., the right to contract). *Id.* at 34-35.

11

Simply put, this is not a retroactivity case. When the General Assembly amended section 192.300 to prohibit counties from imposing standards and requirements on local agricultural operations that were "inconsistent with, in addition to, different from, or more stringent than" existing state law, all ordinances then in effect or thereafter adopted were subject to this new limitation. This is the antithesis of retroactivity. Nothing in the 2021 amendment to section 192.300.1(2) attempts to invalidate ordinances or limit their effect prior to the effective date of that amendment. Instead, the effect of the 2021 amendment is limited to ordinances in effect on and adopted after the effective date of that amendment. Any ordinance in conflict with the new limitation in section 192.300.1(2) is void from and after the effective date of the 2021 amendment regardless of when the ordinance was adopted. Accordingly, the circuit court did not err in entering judgment in Respondents' favor on these claims.

## IV.     Preemption

Appellants allege that, even if the current section 192.300.1(2) is not unconstitutional and applies to ordinances adopted prior to the effective date of the 2021 amendment, section 192.300.1(2) does not invalidate Regulation 6 because neither section 1 of Regulation 6 (concerning "air quality") nor section 2 of Regulation 6 (concerning "water quality") is "inconsistent with, in addition to, different from, or more stringent than" any statute contained within chapters 192, 260, 640, 643, or 644, or any

12

rule or regulation promulgated under those chapters.[9] Appellants allege there must be an existing state law or regulation addressing the specific subject matter of sections 1 and 2 for section 192.300.1(2) to apply. Again, Appellants are mistaken.

Both parties address this issue in terms of preemption, but that is an imprecise if not improper use of that term. Preemption occurs when one regulation, either expressly or implicitly, displaces another, usually because the preemptive regulation is promulgated by a governmental entity superior to the one promulgating the preempted regulation. Here, on the other hand, having disposed of Appellants' constitutional challenges, there is no doubt that the General Assembly can limit the authority of counties and that the amendments to section 192.300 are such limitations. And, having rejected Appellants' claim that these amendments cannot invalidate ordinances adopted prior to the effective date of the amendments, there is no doubt that Regulation 6 is invalid (and has been since HB 271 became effective) if Regulation 6 is "inconsistent with, in addition to, different from, or more stringent than" any of the identified statutes or any regulations promulgated under them. Accordingly, this claim is a simple matter of statutory construction and application – and easier dealt with in such terms without the trappings of preemption.

---

[9] Appellants appear to concede (or, at least, do not contest) that Cedar County's ordinance violates the current version of section 192.300.1(2). Instead, their argument is limited to Regulation 6.

13

To determine whether section 192.300.1(2) prohibits Regulation 6, meaning must be given to each word or phrase in the statute. Section 192.300.1(2) expressly prohibits county commissions and public health centers from

> [i]mpos[ing] standards or requirements on an agricultural operation and its appurtenances, as such term is defined in section 537.295, that are inconsistent with, in addition to, different from, or more stringent than any provision of [chapter 192] or chapters 260, 640, 643, and 644, or any rule or regulation promulgated under such chapters.

First, the term "agriculture operation and its appurtenances" is defined by section 537.295, which provides this phrase "includes, but is not limited to, any facility used in the production or processing for commercial purposes of crops, livestock, swine, poultry, livestock products, swine products or poultry products." § 537.295.2, RSMo 2016. There is no question this definition encompasses CAFOs regulated by Regulation 6.

Second, there is no doubt Regulation 6 imposes "standards or requirements" on CAFO operations. *See Webster's Third New International Dictionary of the English Language* 2223 (3d ed. 2002) ("Standard" includes "something that is established by authority, custom, or general consent as a model or example to be followed."); *Id.* at 1929 ("Requirement" includes: "a : something that is wanted or needed … b : something that is called for or demanded : a requisite or essential condition."). The Public Health Center established Regulation 6 as a model for air and water quality standards to be followed, and it contains essential conditions for operating a CAFO within Cooper County. Therefore, Regulation 6 is a "standard" or "requirement" for purposes of section 192.300.1(2).

14

Third, and most important, is the phrase "inconsistent with, in addition to, different from, or more stringent than" various statutes and/or regulations. The General Assembly does not define these terms. "Absent express definition, statutory language is given its plain and ordinary meaning, as typically found in the dictionary." *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 68 (Mo. banc 2018) (quoting *State v. Brookside Nursing Ctr., Inc.*, 50 S.W.3d 273, 276 (Mo. banc 2001) (internal quotation marks omitted)). "Inconsistent" is defined as "lacking consistency : incompatible, incongruous, inharmonious." *Webster's Third New International Dictionary of the English Language* 1144 (3d ed. 2002). "Addition" is defined as "the result of adding : anything added : increase, augmentation." *Id.* at 24. "Different" is defined as "1 : partly or totally unlike in nature, form, or quality … : having at least one property not possessed by another …; 2 : not the same : distinct or separate (from another or from others in a group)." *Id.* at 630. Finally, "stringent" is defined as "marked by rigor, strictness, or severity : rigidly controlled by rule or standard : not loose or lax." *Id.* at 2263. To be clear, only one of the foregoing limitations need be met for Regulation 6 to be void under section 192.300.1(2).

Appellants argue section 192.300.1(2) does not prohibit Regulation 6 because the subject matter of Regulation 6 is not addressed by any express statutory provisions or regulations. They cite the court of appeals' decision in *Friends of Responsible Agriculture v. Zimmerman*, 51 S.W.3d 64 (Mo. App. 2001) [hereinafter *FARMER*], in support of this proposition. However – even if it is true that there are no state laws or regulations on the same subject as Regulation 6 – *FARMER* does not stand for the general

15

proposition that counties can regulate in the absence of state law. Instead, *FARMER* applied to the challenged rules a Missouri statute prohibiting the Missouri Air Conservation Commission ("MACC") from adopting rules or regulations *stricter* than federal law. *Id.* at 68. In upholding the challenged rules, the court of appeals interpreted the statute's language to allow MACC to regulate in the absence of on-point federal law. *Id.* at 79-80. That statute, section 643.055.1, RSMo 2000, is fundamentally different from section 192.300 because section 643.055.1 prohibited MACC from establishing only standards and guidelines "stricter than those required" under federal law. § 643.055.1, RSMo 2000. Here, section 192.300.1 prohibits the county commissions and public health centers from imposing standards or requirements "***inconsistent*** with," "***in addition*** to," or "***different*** from" relevant state law. Unlike the statute in *FARMER,* section 192.300 does not permit counties to regulate in the absence of some comparable state law or regulation because such local ordinances would – at the very least – be "in addition to" the specified state laws or regulations, which section 192.300 prohibits.

In particular, section 1 of Regulation 6 is invalid under section 192.300.1(2) because it imposes performance standards on the emissions of hydrogen sulfide, ammonia, fine particulate matter ("PM 2.5"), and coarse particulate matter ("PM 10"), and those standards are "different from" or "in addition to" the identified state laws and regulations. These standards are "different from" those prescribed by 10 C.S.R. 10-6.010, which is a regulation promulgated by MACC pursuant to its authority under chapter 643. Regulation 6's hydrogen sulfide and particulate matter standards are "different from" 10 C.S.R. 10-6.010's standards because they do not include a time or

16

frequency element. Unlike 10 C.S.R. 10-6.010 – which allows for a reading above the prescribed limit at least once per year for hydrogen sulfide and no more than once per year on average over three years for particulate matter – Regulation 6 appears to be violated if a single inspection returns a reading in excess of its prescribed thresholds.

Appellants argue the ambient air quality standards set in 10 C.S.R. 10-6.010 are quantitatively different from the emissions limitations in Regulation 6; therefore, Regulation 6 cannot be compared with 10 C.S.R. 10-6.010. Even if Appellants are correct, Regulation 6's hydrogen sulfide, PM 2.5, and PM 10 standards still conflict with section 192.300 because these standards are "in addition to" what is required by the relevant state law and, therefore, are invalid under section 192.300.1(2). Accordingly, section 1's standards for hydrogen sulfide, PM 2.5, and PM 10 are void.

Regulation 6's ammonia standard also is likely "different from" 10 C.S.R. 10-6.165, which is another regulation promulgated by MACC pursuant to its authority under chapter 643. Unlike 10 C.S.R. 10-6.165 – which prohibits Class 1A CAFOs from emitting odorous matter in certain concentrations and frequencies for a certain duration – Regulation 6's ammonia standard expressly applies to both Class I and Class II CAFOs. Appellants argue ammonia is not an odorous matter covered by the regulation. Even if they are correct, Regulation 6's ammonia standard still conflicts with section 192.300 because it sets a standard "in addition to" what is required elsewhere in state law or regulation. Accordingly, under section 192.300.1(2), the ammonia standard in Regulation 6, section 1, is void.

Section 2 of Regulation 6 imposes restrictions on the construction of subsurface manure containment structures and the land application of wastes.  Respondents contend section 2 is "inconsistent with, in addition to, different from, or more stringent than" 10 C.S.R. 20-8.300, a regulation promulgated by the Missouri Department of Natural Resources pursuant to chapters 640 and 644.[10]  Appellants maintain 10 C.S.R. 20-8.300 does not deal with subsurface containment structures or land application of wastes and, instead, lawfully fills the void in state law per *FARMER*.  Even if 10 C.S.R. 20-8.300 is not on point, section 2 still conflicts with section 192.300 because it sets standards "in addition to" what is required by relevant state law and/or regulation and, therefore, is invalid under section 192.300.1(2).  As a result, the restrictions on subsurface manure containment structures and the land application of wastes in Regulation 6, section 2, are void.

## Conclusion

For the reasons set forth above, the judgment of the circuit court is affirmed.

_____
Paul C. Wilson, Chief Justice


All concur.

---

[10]   Respondents argue Regulation 6 is "inconsistent with, in addition to, different from, or more stringent than" several other state regulations.  This Court declines the invitation to further delve into the myriad of relevant state regulations because – as discussed above – Regulation 6's requirements are "in addition to" what is required by relevant state law.