**PROFESSIONAL HOUNDSMEN OF MISSOURI, INC., Appellant,**

v.

**COUNTY OF BOONE, Respondent.**

No. WD 44897.

Missouri Court of Appeals,
Western District.

June 16, 1992.

William P. Cronan, Columbia, for appellant.

Joe L. Moseley, Pros. Atty., John L. Patton, Asst. Pros. Atty., Columbia, for respondent.

Before FENNER, P.J., and ULRICH and SPINDEN, JJ.

SPINDEN, Judge.

Professional Houndsmen of Missouri, Inc., challenges the validity of an animal control ordinance and the authority of Boone County to adopt it. The trial court found in favor of Boone County in Professional Houndsmen's suit for declaratory judgment and injunction. We affirm.

Professional Houndsmen, a not-for-profit corporation with about 1100 members statewide, is a lobby organization for fox hunters. Boone County's commission adopted the ordinance at issue on August 2, 1990, while Boone County was a second class county. On January 24, 1991, the county commission, after Boone County attained first class status, readopted the ordinance with a different effective date. The county commission also contracted with Columbia city government and the Central Missouri Humane Society for animal control services.

The ordinance's purpose was to regulate "the ownership and possession of animals in order to protect the public health

and prevent the entrance of infectious, contagious, communicable or dangerous diseases into Boone County, Missouri." It required animal owners to register their animals, to obtain rabies vaccinations, to control dogs by leash, and to confine their animals if they were in highly-populated areas in the county. All costs of enforcement were to come from the county's general tax funds.

Professional Houndsmen argues that the trial court erred in upholding the ordinance because the commission adopted it without legislative authority. The commission counters that the General Assembly granted it the necessary authority in § 192.300, RSMo Supp.1991, which provides:

> The county commissions and the county health center boards of the several counties may make and promulgate orders, ordinances, rules or regulations, respectively as will tend to enhance the public health and prevent the entrance of infectious, contagious, communicable or dangerous diseases into such a county, but any orders, ordinances, rules or regulations shall not be in conflict with any rules or regulations authorized and made by the department of health in accordance with this chapter or by the department of social services under chapter 198, RSMo.

We agree that the ordinance is within the scope of authority granted by § 192.300. The ordinance enhances public health by preventing rabies and animal bites. As the Missouri Supreme Court stated, in *Craig v. City of Macon*, 543 S.W.2d 772, 775 (1976) (citations omitted):

> [T]he preservation of the public health is recognized as a goal of the highest priority.... "When a city is given the power to do a certain thing it is necessarily left with large discretion as to the method to be adopted and the manner in which it is to be done." ... And there exists a presumption of reasonableness that attaches to such ordinances.

Animal control is reasonably related to the purpose of public health enhancement and disease prevention.

■ Professional Houndsmen argues in the alternative that the county commission could not base its authority on § 192.300 because that is a general statute involving general health matters. It asserts that a statute specifically relating to control of dogs, § 322.125, RSMo 1986, was in force and should control; because § 322.125 is a special statute, it must be read as an exception to the general provisions of § 192.300. Professional Houndsmen urges this interpretation because § 322.125 applies only to:

> The county commission of any county of the second class containing all or part of a city having a population of four hundred fifty thousand or more, and the county commission of any such county which becomes a county of the first class without a charter form of government after September 28, 1971[.]

Because Boone County does not fall within the class outlined in § 322.125, Professional Houndsmen argues, the General Assembly obviously did not intend for a county commission to have authority to control dogs.

The argument is without merit. These statutes are not in conflict; neither precludes the other. The rule of statutory construction cited by Professional Houndsmen has no application to this case.

■ Professional Houndsmen's next point of error is that the trial court erred in upholding the ordinance because § 66.080, RSMo 1986, does not authorize Boone County to enact a penalty for violation of its ordinance. The ordinance included a provision which stated, "Any person who violates any requirement or provision of this chapter shall be deemed guilty of a misdemeanor and shall be punished as provided by law."

We conclude that the county commission had authority to include the penalty provision. Section 192.300 provides:

> Any person, firm, corporation or association which violates any of the orders or ordinances adopted, promulgated and published by such county commission is guilty of a misdemeanor and shall be prosecuted, tried and fined as otherwise provided by law. The county commission

... of any such county has full power and authority to initiate the prosecution of any action under this section.

Section 557.021.1, RSMo Supp.1991, provides, "Any offense defined outside this code which is declared to be a misdemeanor without specification of the penalty therefore is a class A misdemeanor." Sections 558.011, RSMo Supp.1991, and 560.016, RSMo 1986, set out the punishment for class A misdemeanors. Any action initiated for violations by the county would be pursuant to state law under Section 192.300 and punishable under non-code penalty statutes. The law clearly provides a penalty for violations of the ordinance. The penalty is established by statutes passed by the state legislature, not Boone County. Professional Houndsmen's point is without merit.

■ Professional Houndsmen then contends that by requiring the licensing, inoculation and impoundment of dogs, the county commission exceeded the scope of the rules and regulations of the Missouri Departments of Health and Social Services. Neither the Department of Health nor the Department of Social Services have any regulations relating to the control of dogs. Professional Houndsmen avers that because § 192.300 indicates that ordinances are to be in accord with the rules and regulations of the Department of Health and Department of Social Services, the legislature intended that the commission's authority to promulgate ordinances under § 192.300 be limited to the subjects covered under the Department of Health and Department of Social Services regulations. We disagree.

The General Assembly intended this provision of § 192.300 to avoid conflicts—not to restrict subject matter. A county commission may promulgate ordinances within § 192.300's scope of authority so long as they do not conflict with the Departments' rules and regulations.

■ Professional Houndsmen next argues that the ordinance's definition of "vicious dog" is unreasonably vague; it does not sufficiently inform a dog owner which of his dogs may be subject to the ordinance. We disagree. The ordinance's definition is reasonably articulate; it defines a vicious dog as "any dog of any breed which without provocation or command bites or injures a human being or exhibits a pattern of behavior of biting or attacking or attempting to bite or attack human beings or other domestic animals." Professional Houndsmen asserts that if one dog of any breed bites a human being, then all dogs of that breed are "vicious." This is not so. The reasonable interpretation of the definition is that any dog, no matter what its breed, which bites or exhibits a pattern of biting humans or domestic animals is a vicious dog.

Professional Houndsmen's next point asserts that the ordinance improperly delegated legislative authority to the National Association of Public Health Veterinarians. The ordinance provides:

*Vaccinations for Dogs and Cats* No person shall own or possess a dog or non-feral cat over three months of age unless such dog or cat is kept vaccinated appropriately with a vaccine approved and listed in the current year's *Rabies Compendium* and administered as specified therein.

The ordinance further defines "Rabies Compendium" as "the most current edition of a document by that name published by the National Association of State Public Health Veterinarians which serves as a standard for rabies vaccine, treatment and policy."

■ Incorporation by reference is an appropriate legislative procedure. *General Installation Co. v. University City,* 379 S.W.2d 601, 604–05 (Mo.banc 1964). As the Supreme Court stated, in *City of Warrensburg v. Board of Regents of Central Missouri State University,* 562 S.W.2d 340, 344 (banc 1978) (citing *Hassett v. Welch,* 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938)):

Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions

adopted had been incorporated bodily into the adopting statute.... Such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute so taken unless it does so by express intent.

■ The ordinance's reference to the compendium's "most current edition" could be interpreted, as the Professional Houndsmen urges, to mean that the ordinance incorporated not only the edition in effect when the commission wrote the ordinance, but all future editions. That would be an unlawful delegation. The right to exercise police power "cannot be delegated to private persons." *State ex rel. J.A. Rouveyrol v. Donnelly*, 285 S.W.2d 669, 674 (Mo. banc 1956).

■ The ordinance can be interpreted another way, however—a way urged by the county commission: that "only the current list in effect at the time the animal ordinance is adopted is incorporated by reference." Such an interpretation avoids any delegation problem. So long as the county commission enforces its ordinance in that manner and amends its ordinance to incorporate any future editions of the compendium, it will not have committed an unlawful delegation. We conclude that at this time Professional Houndsmen's point is without merit.

■ Professional Houndsmen also contends that the ordinance violated its equal protection rights because application of the ordinance's provisions differed according to location in the county without a rational basis. The equal protection clauses of the state and federal constitutions require that classifications established under the exercise of police power be reasonable and rationally related to the stated purpose of the ordinance. *Craig*, 543 S.W.2d at 775. The ordinance's classification scheme is rational. It is more restrictive where populations are more dense. Professional Houndsmen's point is without merit.

1. It cites Mo. Const. art. III, §§ 40–42.

■ Further, Professional Houndsmen asserts that Boone County does not have the constitutional or statutory authority to divide the county into zones for enforcement of the ordinance. It argues that the ordinance violates the state's constitution by not having uniform operation throughout the county.[1] We disagree. The ordinance uniformly applies to all animal owners. Its differentiation according to population is rational and reasonable. Section 192.300 does not restrict the means or methods of public health regulations, so any reasonable method is lawful. *Id.* at 774–75. We conclude that the General Assembly contemplated that such differentiation would be necessary and that it is not contrary to the legislative authority in § 192.300.

■ Professional Houndsmen then argues that the ordinance is invalid because it authorizes impoundment and destruction of animals without sufficient notice to the owner, a violation of the due process of law. We disagree. The ordinance provides that dogs and cats which bite or injure a human being or which exhibit symptoms of rabies may be impounded for observation and determination of rabies infestation. The ordinance states:

[A]ny animal impounded ... may be redeemed by its owner or possessor at a county animal shelter during normal business hours or as authorized by the supervisor of that facility[.] ... Any animal which is not redeemed within five days after impound-ment ... shall be disposed of as follows in the discretion of the Health Director:

   *    *    *    *    *    *

[H]umane euthanization provided the owner or possessor cannot be notified of impoundment after reasonable effort to notify the owner or the owner or possessor thereof fails to redeem such animal within the redemption period after notification thereof.

The Director of Public Health testified that his office notified owners if an animal had any sort of owner identification tag on

it. If no identification was on the animal, public health employees talked to people in the neighborhood where the animal was found, and they left doorknob hangers at the neighborhood's houses indicating that an animal had been collected and for the owner to check with the Humane Society.

██ We conclude that this constitutes a reasonable effort and satisfies due process requirements. The county commission's interest in exercising police power to protect the public from animals in violation of county health regulations outweighs an animal owner's property rights when an animal is impounded and not claimed after reasonable attempts to notify the owner. *See McCrory v. Fisher*, 108 S.W.2d 413 (Mo.App.1937); *Sentell v. New Orleans & Carrollton Railroad Co.*, 166 U.S. 698, 17 S.Ct. 693, 41 L.Ed. 1169 (1897). Professional Houndsmen's point is without merit.

██ In its next point of error, Professional Houndsmen claims that the trial court erred in upholding the ordinance because it requires payment of fees and costs before an animal may be redeemed from impoundment. This, the Houndsmen asserts, violates the Hancock Amendment, Mo. Const. art. 10, § 22(a), by imposing a fee without voter approval. We disagree.

Art. 10, § 22(a) provides that no county or other political subdivision may levy any "tax, license or fees" without a vote of the people. Section 192.300 does not levy or set a fee; it provides counties with the power to levy a fee which is to be deposited in the county treasury, but no amount is set in the statute. Although the ordinance permits the Humane Society to charge individuals a usual and customary fee for the redemption of an impounded animal, the Humane Society has contracted with the county not to charge any fee for redemption of animals impounded by animal control officers. Thus, no usual and customary fees are associated with the animal ordinance at this time.

██ Professional Houndsmen next argues that the trial court erred in upholding the ordinance because it incorporates a provision of the "Rabies Compendium" that "[a]ll animal rabies vaccines should be restricted to use by or under the supervision of a veterinarian." This, Professional Houndsmen contends, is contrary to § 340.-020.1(4), RSMo 1986, which authorizes "[t]he owner of any animal or animals and the owner's full-time regular employees from caring for and treating any animals belonging to such owner[.]" We disagree; the provisions are not in conflict. The purpose of § 340.020.1(4) is not to guarantee that an animal owner can vaccinate his animal; it is to mandate that his caring for and treating his animals shall not be deemed the unlawful practice of veterinary medicine. The county commission did not include the veterinarian requirement in the ordinance because it deemed vaccination of a dog to be the practice of veterinary medicine, but because it would help assure that the vaccination was properly administered and would effectively arrest the spread of rabies.

██ Professional Houndsmen also claims that the ordinance violates federal antitrust liability law because it provides veterinarians the power to establish a monopoly in favor of their profession. We disagree. In *City of Columbia v. Omni Outdoor Advertising, Inc.*, — U.S. —, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991), the U.S. Supreme Court held that state political subdivisions are entitled to immunity from antitrust liability where a restriction of competition is a statutorily authorized implementation of state policy. Under § 192.-300, counties are authorized to establish health regulations. Hence, county governments which regulate vaccinations through ordinances enacted pursuant to § 192.300 are implementing the authorized state policy of protecting and enhancing public health.

Professional Houndsmen's final point of error is that the ordinance requires citizens to submit to unreasonable searches and seizures. The ordinance prohibits persons from knowingly interfering with officials in the performance of their official duties as prescribed by the chapter on animal control or state law. It prohibits persons from refusing to deliver an animal to an animal

control officer when requested to do so under the impoundment provisions of the chapter.

Nothing in either of these subsections requires persons to submit to unreasonable searches or seizures. Further, the record does not show any evidence that any citizen has been subjected to a search and seizure, valid or not. Where no actual controversy exists, this court need not determine it. *State v. Kiesau,* 794 S.W.2d 309, 312 (Mo. App.1990). Hence, it is unnecessary for us to speculate about the validity of some hypothetical search and seizure.

Finding no merit to any of Professional Houndsmen's attacks on the animal control ordinance, we affirm the judgment of the trial court.

All concur.