Jeremy and Janice BORRON,
Appellant,

v.

Buck FARRENKOPF, Becky Thudium and Jim Libby In Their Capacity as the Board of County Commissioners of Linn County, Missouri and Linn County, Missouri and State of Missouri, Amicus Curiae, Respondents,

No. WD 56648.

Missouri Court of Appeals,
Western District.

Nov. 23, 1999.

George P. Coughlin, Kansas City, for Appellant.

S. Mark White, Freilich, Leitner & Carlisle, Kansas City, for Respondents.

Jeremiah W. (Jay) Nixon, Atty. Gen., William J. Bryan, Asst. Atty. Gen., Jefferson City, for amicus curiae State of Missouri.

Before: Presiding Judge HAROLD L. LOWENSTEIN, Judge FOREST W. HANNA * and Judge LAURA DENVIR STITH.

LOWENSTEIN, Judge.

At issue in this case is the ability of a third class Missouri county to enact an ordinance establishing health regulations governing the operation of large concentrated animal feeding operations (CAFOs) within the county. The plaintiffs-appellants (Borrons) own a 1,120–acre tract in Linn County and want to conduct a hog finishing operation involving some 18,000 hogs, as well as a farrow to feeder pig operation involving some 2,750 sows. The respondents (who for the sake of simplicity will be hereafter referred to as the County) are the County Commissioners of Linn County who passed, under the auspices of § 193.300, RSMo 1994 (all further statutory references will be to the Revised Statutes of Missouri of 1994 unless otherwise indicated), a health ordinance (hereafter, the Ordinance) with rules and regulations regarding permits needed to operate a CAFO in the County. The Ordinance, which regulated CAFOs like the one the Borrons sought to open, covered such matters as requirements on landowners to avoid degradation of soil, water and air from the waste generated in such operations. It also included building and setback requirements (i.e., distance from oth-

* Recused.

er CAFOs, distance from populated areas, and distance from occupied dwellings.)

The Borrons filed for declaratory relief. There was a stipulation as to the facts. The legal questions presented to the trial court, and here on appeal, are whether the County was either prohibited by state law or without the power to enact the Ordinance, or was preempted from passing the Ordinance because of other state statutes. Affidavits were presented and the trial court granted summary judgment in favor of the County, determining the County's Ordinance was valid and enforceable. Review, pursuant to *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376–7 (Mo. banc 1993), is essentially *de novo.* The propriety of the grant of summary judgment is purely an issue of law, and this court need not defer to the trial court's order. *Id.*

### I. Power of the County to Enact the Ordinance

■ The Ordinance states it was adopted pursuant to § 192.300.[1] The Borrons assert § 64.620, which relates to planning and zoning power in second and third class counties, takes away the power of the County to enter into the domain of legislating building restrictions on land such as theirs.[2]

■ Counties may only exercise powers (1) granted to them in express words by the state, (2) those necessarily and fairly implied in or incident to those powers expressly granted, and (3) those essential and indispensable to the declared objectives and purposes of the county. *Premi-*

*um Standard Farms v. Lincoln Township of Putnam,* 946 S.W.2d 234, 238 (Mo.1997); *Lancaster v. County of Atchison,* 352 Mo. 1039, 180 S.W.2d 706, 709 (1944); *Professional Houndsmen of Missouri v. County of Boone,* 836 S.W.2d 17, 19 (Mo.App.1992). Consequently, when a local government steps out of these boundaries, or the state expressly prohibits them from acting, their acts are void. *Lancaster,* 180 S.W.2d at 708; *Premium Standard,* 946 S.W.2d at 238.

For example, in *Premium Standard,* a case relied upon by the Borrons for the proposition that the county lacked the power to enact this ordinance, the Lincoln Township of Putnam County (Township) enacted a "Comprehensive Plan and Zoning Regulations." *Premium Standard,* 946 S.W.2d at 235. The plan regulated setback and bonding requirements on livestock sewage lagoons and finishing buildings. *Id.* at 236. Premium Standard Farms had recently constructed livestock barns and sewage lagoons on a parcel of land, which they had purchased in Putnam County. *Id.* at 235. Premium Standard Farms challenged the Township's regulations, citing the state statute that at that time prevented townships from imposing zoning regulations on farm structures, stating that the Township did not have the authority to enact the plan. *Id.* at 236.

Subsequently, the Supreme Court ruled that the Township's zoning regulation affecting Premium Standard's parcel was invalid and unenforceable. *Premium Standard,* 946 S.W.2d at 240; *Lancaster,* 180

---

**1.** Section 192.300 is part of a chapter dealing with public health and welfare. This section allows county commissions to enact ordinances which, "will tend to enhance the public health and prevent the entrance of infectious ... or dangerous diseases into such county, but ... shall not be in conflict with rules or regulations ... made by the department of health ... or by the department of social services ...

**2.** Section 64.620.1 gives counties such as Linn the power to regulate and restrict in

unincorporated areas, such things as the location, size and use of buildings. However, 64.620.2 states, "The provisions of this section shall not apply to ..." land used for "... the raising of ... livestock As noted, Section 192.300 is located in a chapter relating to the state department of health and allows counties to make health rules in addition to those promulgated by the Missouri Department of Health. Section 64.620 is included in a section pertaining to planning and zoning for second and third class counties.

S.W.2d at 708; *Professional Houndsmen of Missouri*, 836 S.W.2d at 19. The Court stated that a plain reading of the Missouri zoning statute did not authorize the Township's regulation of agricultural uses, and even went so far as to expressly state that the zoning power could not be exercised on farm structures. *Premium Standard*, 946 S.W.2d at 240. The prohibition on this type of regulation by the statute was a clear limitation on the Township's general powers to enact the plan and, therefore, the county was without authority to act. *Id.; Professional Houndsmen of Missouri*, 836 S.W.2d at 19.

 In contrast, a county *will have* the authority to enact a measure if the power is expressly given to them by the state. *See Lancaster*, 180 S.W.2d at 708; *Avant/Petroleum, Inc. v. St. Louis County*, 974 S.W.2d 506, 509 (Mo.App.1998); *Professional Houndsmen of Missouri*, 836 S.W.2d at 19. Specifically, if a state statute authorizes a county to regulate a certain area, then the county has the authority to enforce the measures it enacts. *Avant/Petroleum, Inc.*, 974 S.W.2d at 509; *Professional Houndsmen of Missouri*, 836 S.W.2d at 19. In *Avant/Petroleum*, the local government relied on RSMo § 192.300 which, as shown in footnote one, authorizes local governments to enact legislation "[tending] to enhance the public health and prevent the entrance of infectious, contagious, communicable or dangerous diseases into such a county." 974 S.W.2d at 509. *See also, Professional Houndsmen of Missouri*, 836 S.W.2d at 19. St. Louis County enacted an ordinance regulating the sales of tobacco products prohibiting vendors from selling tobacco unless they were licensed by the county department of health. *Avant/Petroleum, Inc.*, 974 S.W.2d at 508. The ordinance also prohibited vendors from selling tobacco to persons who were under the age of eighteen. *Id.* The plaintiffs, a number of retail tobacco vendors, objected to the ordinance on the grounds that the county did not have the authority to enact such a measure. *Id.*

In its opinion, the court pointed out that the ordinance's purpose was to reduce tobacco use, as it was a known health hazard. *Avant/Petroleum, Inc.*, 974 S.W.2d at 509; *Professional Houndsmen of Missouri*, 836 S.W.2d at 19. The restrictions in the ordinance bore a rational relation to the health measures authorized under § 192.300. *See Id.* The county sought to protect youths from accessing the hazard of tobacco, and the county's regulation of tobacco sales was held lawful and a reasonable method to accomplishing this goal. *Avant/Petroleum, Inc.*, 974 S.W.2d at 509. Thus, even though not expressly delegated the power to regulate tobacco sales, the county had the authority to enact the ordinance since they were the general power to enhance the public health under § 192.300; *Lancaster*, 180 S.W.2d at 708; *Avant/Petroleum, Inc.*, 974 S.W.2d at 509; *see also Professional Houndsmen of Missouri*, 836 S.W.2d at 19 (county could enact an animal control ordinance requiring dog owners to register their animals, obtain rabies vaccinations for their pets, control dogs by leash, and confine animals in populated areas because § 192.300 authorizes counties to promulgate orders which enhance the public health).

In the case at bar, the Ordinance enacted by Linn County falls not under the ruling of *Premium Standard* as Appellants contend, but under the ruling of *Avant/Petroleum*. The Ordinance in question here "establishes health regulations for concentrated animal feeding operations." *Avant/Petroleum, Inc.*, 974 S.W.2d at 509. Under § 192.300, Linn County is specifically authorized to make health ordinances, like St. Louis County did in *Avant/Petroleum* and in *Professional Houndsmen of Missouri*

In *Premium Standard*, the township enacted a *zoning* statute, which did not give any indication of its intention to guard the health of the locality. 946 S.W.2d at 236. Under § 64.620, as interpreted in *Premi-*

*um Standard,* Linn County's authority to zone farm structures is excluded. *Id.* at 240. However, in their analysis, Appellants incorrectly assert that the statute here is a zoning statute, instead of a health protection statute.

The regulations in question do have a zoning quality about them, but as Respondent points out, and as exhibited in the record here, there is a font of case law and technical information illustrating the health hazards related to hog facilities. Ground water pollution, pathogenic organisms, and disease have all been linked to livestock animals and their waste. It is quite clear that Linn County's regulation of the structures and lagoons of Appellant's hog facility, including distance requirements of animal waste from streams, water supply and buildings occupied by people, is rationally related to the purpose of public health enhancement and disease prevention. *See Avant/Petroleum, Inc.,* 974 S.W.2d at 509; *Professional Houndsmen of Missouri,* 836 S.W.2d at 19. The purpose of the ordinance was to regulate for health concerns rather than for a uniform development of real estate.

While § 192.300 does not specifically give counties the authority to regulate CAFOs with setback and permit requirements, it also did not give St. Louis County the express authority to regulate tobacco sales. *See* § 192.300; *Avant/Petroleum,* supra at 509. Subsequently, Linn County was regulating a certain type of activity in order to enhance another group's health, much like St. Louis County in *Avant/Petroleum,* 974 S.W.2d at 509. It is clear that the Ordinance here enacted by Linn County is rationally related to the heath problems stemming from livestock facilities, and therefore expressly authorized under § 192.300. *See also Avant/Petroleum, Inc.,* 974 S.W.2d at 509; *Professional Houndsmen of Missouri,* 836 S.W.2d at 19.

## II. The County's Ability to Regulate Was Preempted by State Law

■ In Appellants' second point, they claim that state law preempts Respon-

dent's ordinance. When a local law is not in harmony with a state law, the state law can preempt the local law in two ways. *Morrow v. City of Kansas City,* 788 S.W.2d 278, 281 (Mo.1990); *Union Elec. Co. v. City of Crestwood,* 499 S.W.2d 480, 483 (Mo.1973). First, if the local law is in direct conflict with state law, then the local law is determined to be contrary to the state law and, therefore, invalid. *Morrow,* 788 S.W.2d at 281; *Goodell v. Humboldt County,* 575 N.W.2d 486, 493 (Iowa 1998). Consequently, a locality may not legislate in areas that are "occupied" (thoroughly regulated) by state law. *Morrow,* 788 S.W.2d at 281; *City of Maryville v. Wood,* 358 Mo. 584, 216 S.W.2d 75, 77 (1948). Subsequently, when local laws are preempted, they are determined to be invalid and unenforceable. *Morrow,* 788 S.W.2d at 281; *Union Elec. Co.,* 499 S.W.2d at 482; *State ex rel. Hewlett v. Womach,* 196 S.W.2d 809, 814 (Mo.1946).

### A. Conflict With State Law

■ If a local law either prohibits what state law allows, or allows what state law prohibits, then a local law is in conflict with the state law and, therefore, preempted. *Morrow,* 788 S.W.2d at 281; *Hewlett,* 196 S.W.2d at 814; *Goodell,* 575 N.W.2d at 493. (Appellants do not claim that the Ordinance allows what state law prohibits.) Thus, local ordinances regulating matters upon which there is a state law must be in harmony with the state on that subject. *Hewlett,* 196 S.W.2d at 812. However, while preemption forbids a conflict with state law, it does not prohibit extra regulations by the locality. *Id.* at 814. Therefore, in order for an ordinance to be in conflict with state law it must be prohibitory, not simply regulatory. *Id.*

In *Hewlett,* for example, Springfield enacted an ordinance compelling retailers selling alcohol directly to customers in its original package to obtain a city license and pay a yearly fee. 196 S.W.2d at 811.

The ordinance was aimed at limiting the number of places where intoxicating liquor would be sold in the city. *Id.* After the ordinance was enacted, a grocery store owner from Springfield brought suit against the city, claiming that since he had a state license, the city license requirement and fee were in conflict with the state Liquor Control Act and, therefore, invalid. *Id.* at 812.

In its ruling, the Supreme Court of Missouri pointed out that the City's requirements were merely an addition to the regulations already imposed by the state, not a prohibitory measure. *Hewlett,* 196 S.W.2d at 814. The Court went on to state that the City could not have prohibited liquor sales, because to do so would be in direct conflict with the state act. *Id.* at 814; *Morrow,* 788 S.W.2d at 281. The City was free to additionally regulate the distribution of liquor and, therefore, the ordinance was not in conflict with state law. *Hewlett,* 196 S.W.2d at 814. Local regulations may exceed state requirements, so long as they do not prohibit what state law permits. *See Id; Morrow,* 788 S.W.2d at 281.

However, state law will preempt a local law if it is in direct conflict with state law. *Morrow,* 788 S.W.2d at 281; *Goodell,* 575 N.W.2d at 493. This was the case in *Morrow,* where a firefighter who was injured while on the job was compensated under the Missouri Workers' Compensation Act. 788 S.W.2d at 279. During Morrow's nineteen-week absence, the city of Kansas City (his employer) voluntarily paid Morrow an amount equal to his lost weekly wages. *Id.* The City made payments to Morrow during his absence in accordance with a city ordinance which provided that if an employee was unable to work due to an accident arising out of the course of his employment, he would be paid his regular salary from the date of the injury forward, up to one year. *Id.* However, the ordinance added that the salary would be paid *in lieu of* compensation for temporary dis-

ability provided under the Workmen's Compensation Act. *Id.* at 280.

Additionally, Morrow had received a Workers' Compensation award for permanent partial disability in the amount of $6,443.55, *Morrow,* 788 S.W.2d at 279. Subsequently, the City claimed the additional credit against the award for the amount paid to Morrow in excess of the statutory temporary total disability award. *Id.* However, the state statute on the issue read that, "The employer shall not be entitled to credit for wages paid." *Id.* at 280. Thus, the ordinance and the state law were in direct conflict, and the Court ruled that the local law was invalid, denying the city's claim for a credit. *Id.* at 281. Summarizing its position, the Court stated that local laws must not conflict with prior or subsequent state statutes, and must yield so as not to be contrary. *Id.*

Here, the Borrons claim that the Ordinance is in conflict with § 640.700 *et seq.,* RSMo Cum.Supp.1998, *Id.* at 281. These statutes enumerate the state regulations for CAFOs under the Department of Natural Resources. § 640.700 *et seq.* These regulations cover requirements for reporting, permits, size and waste handling. § 640.710. They also regulate buffer distances and setback requirements, much like the Ordinance here. § 640.715. The Borrons assert that since the Ordinance adds additional requirements, like a *county* permit, fees, and bond for cleanup and restoration, the Ordinance is in conflict with § 640.700 *et seq.*

The case at bar is ruled by *Hewlett* rather than *Morrow.* Here, the County's Ordinance merely requires CAFOs to comply with additional regulations, much like the City of Springfield in *Hewlett* required liquor retailers to obtain an additional city permit. 196 S.W.2d at 814. While the Borrons propose these extra regulations equate to a prohibition on CAFOs, the court disagrees. Linn County was well within its authority to make additional regulations, and was justified in doing so as a reasonable health protection. *See*

§ 192.300; § 640.700 et. seq.; *Hewlett*, 196 S.W.2d at 814. Respondent's requirements were merely an addition to the regulations already imposed by the state, and not a prohibitory measure. *Morrow*, 788 S.W.2d at 281.

## B. Area Was Occupied by Statute

Finally, the Borrons claim that Respondent's ordinance is invalid and unenforceable because it regulates an area which is occupied by state law, particularly § 640.700 *et seq.* which deals with CAFOs. *Union Elec. Co.*, 499 S.W.2d at 482; *City of Maryville*, 216 S.W.2d at 77. State law occupies an area when it has created a comprehensive scheme on a particular area of the law, leaving no room for local control. *Union Elec. Co.*, 499 S.W.2d at 482; *City of Maryville*, 216 S.W.2d at 77. When state law has so completely regulated a given area of the law, then it is said to be occupied, and preempts any local act. *See Union Elec. Co.*, 499 S.W.2d at 482. Thus if the locality attempts to add local regulation to that area of law, then it is invalid. *See Id.* at 484; *City of Maryville*, 216 S.W.2d at 77.

For example, in *Union Electric Co.*, state law preempted a local ordinance because state law already occupied the area of law that the city was trying to regulate. 499 S.W.2d at 483–4. The City of Crestwood enacted an ordinance prohibiting future above ground construction of transmission lines by Union Electric, making a violation of the ordinance a misdemeanor. *Id.* at 482. However, through § 386.250 RSMo, the General Assembly had created the Missouri Public Service Commission, which was given sweeping regulatory jurisdiction over various public utilities, including electric power companies like Union Electric. *Id.* The powers of the Commission covered a number of matters, including the transmission and distribution of power. *Id.*

Subsequently, the Court ruled that § 386.250 preempted Crestwood's ordinance because § 386.250 gave full regula-

tion over electric power companies to the Commission. *Union Elec. Co.*, 499 S.W.2d at 482. Thus, state law had completely regulated that area of the law leaving no room for Crestwood's ordinance. *Id.* at 483; *City of Maryville*, 216 S.W.2d at 77. To give Crestwood the ability to prohibit activities the Commission allowed would be to extinguish the broad supervision and control which the General Assembly had given the Commission. *See Union Elec. Co.*, 499 S.W.2d at 482–3.

However, in the case at bar, while the Respondent county did enact a local ordinance affecting an area in which there was also state regulation, this case does not fall under the ruling of *Union Electric Company or City of Maryville*. 499 S.W.2d at 483, 216 S.W.2d at 77. As Respondent's point out in their brief, § 640.7 10(5) clearly states that "nothing in this section shall be construed as restricting local controls," illustrating the General Assembly's intention to leave a window of authority for local regulation. This express statutory language makes it clear the legislation gave the power of local control to regulate CAFOs to counties such as Linn. *Lancaster, supra*, 180 S.W.2d at 709.

This caveat to the state's regulation of CAFOs is proof that the Department of Natural Resources did not have total authority over the area of CAFOs, like the Missouri Public Service Commission did in *Union Electric Company*. *See Union Elec. Co.*, 499 S.W.2d at 483; *City of Maryville*, 216 S.W.2d at 77. Moreover, unlike in *Union Electric Company*, the County's regulations here were not in conflict with the state law, but only added more stringent regulations. *See Union Elec. Co.*, 499 S.W.2d at 482; *Hewlett*, 196 S.W.2d at 814. State law does not occupy this area and, therefore, Respondent's ordinance is valid and enforceable. *See Union Elec. Co.*, 499 S.W.2d at 482; *City of Maryville*, 216 S.W.2d at 77.

## Conclusion

The County's inherent powers are restricted only to those which are delegated

to them by the state and those which are implied in its authority to carry out those delegated powers. Under § 192.300, Linn County was given the power to make additional health rules to enhance the public health and prevent the entrance of dangerous diseases into the county. Linn County's regulation under its health ordinance of the structures and lagoons of the Borron's hog facility is rationally related to the purpose of public health enhancement and disease prevention. Moreover, the Ordinance was not a zoning ordinance but was indeed a health ordinance. The provisions in the Ordinance as to building locations and setback provisions were to protect nearby water and ground, as well as the air. Linn County was not prohibited from enacting the Ordinance under § 64.620, but had the power for such action under § 192.300.

Furthermore, state law does not preempt the Ordinance as it is neither in conflict with any state law nor did state law occupy the area. In terms of conflict, the powers granted to Linn County were not in discord with prior or subsequent state statutes and, therefore, did not need to yield so as not to be contrary. The Ordinance merely added extra regulations to those already imposed by the state, and was not a prohibitory measure which conflicted with a state law. Linn County was well within its authority to make additional regulations, justified as reasonable health protections. The Ordinance in question did not prohibit something the state allowed, and was, therefore, not in conflict.

Finally, Missouri state law did not occupy the area which Respondents were attempting to regulate. Missouri had not created a comprehensive scheme on this particular area of the law, leaving no room for local control. While the Borrons may claim that § 640.700 *et seq.* occupies the area of CAFO regulation, the General Assembly's inclusion of the language, "nothing in this section shall be construed as restricting local controls" makes it obvious

that the legislature wished to leave room for local action.

The judgment of the trial court is affirmed.

All concur.