CITY OF GREEN RIDGE, Appellant,

v.

Johnnie L. KREISEL, Respondent.

No. WD 56936.

Missouri Court of Appeals,
Western District.

May 2, 2000.

**560**

R. Scott Gardner, Sedalia, for appellant.

Andrew C. Webb, Sedalia, for respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge VICTOR C. HOWARD and Judge THOMAS H. NEWTON.

LAURA DENVIR STITH, Presiding Judge.

Plaintiff–Appellant the City of Green Ridge, Missouri (City), appeals from the decision of the trial court sustaining a motion for summary judgment filed by Defendant–Respondent Johnnie L. Kreisel, on an action the City brought against Mr. Kreisel for violation of City Ordinance 477. The trial court found Ordinance 477 was an invalid zoning ordinance because the City failed to enact the ordinance in accordance with the notice and hearing requirements for zoning ordinances as set forth in Section 89.050.[1] Because we find that Ordinance 477 is not a zoning ordinance, but an ordinance directed toward regulation of health and safety by avoidance of the maintenance of nuisances, the City was not required to comply with the notice and hearing requirements of Section 89.050, and the court below erred in holding otherwise. Accordingly, we reverse and remand for further proceedings not inconsistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1996, the City of Green Ridge filed an action against Johnnie Kreisel for failing to cut the weeds and grass surrounding his junk yard, for permitting the protrusion of junk onto the public street, and for failing to properly store junk, all in violation of Ordinance 413, an ordinance relating to junkyards and their operation. The trial court found the ordinance was a zoning ordinance and dismissed the City's action for lack of subject matter jurisdiction because the City failed to comply with the notice and hearing requirements for enactment of zoning ordinances set forth in Section 89.050. The City appealed the judgment to this Court, but, in June 1998, the appeal was dismissed because the trial court's order was not denominated a final judgment, and thus was unreviewable.

No final judgment was ever entered in the suit over Ordinance 413. Instead, the

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

City filed a separate municipal action against Mr. Kreisel alleging similar violations of Ordinance 477, enacted in March 1996 as a successor to Ordinance 413. Many of its provisions are identical to those of Ordinance 413, but Ordinance 477 adds certain additional definitions and adds provisions relating to the licensure of junk yards and their record-keeping practices.

On July 27, 1998, Mr. Kreisel filed a motion for summary judgment, asserting that Ordinance 477 was a zoning ordinance and, as such, could not be enacted without compliance with the notice and hearing requirements of Section 89.050. The City agreed that the notice and hearing requirements of Section 89.450 were not complied with when Ordinance 477 was enacted, but argued that those requirements were inapplicable because Ordinance 477 is not a zoning ordinance. The trial court found that Ordinance 477 is a zoning ordinance, and accordingly granted Mr. Kreisel's motion for summary judgment. The City appeals.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, discovery, and affidavits reveal no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c); *ITT Commercial Fin. Corp. v. Mid–Am. Marine*, 854 S.W.2d 371, 380 (Mo. banc 1993). Once the movant has demonstrated that no genuine issue of material fact exists, the burden shifts to the non-movant to show that there is a genuine dispute as to the material facts supporting the movant's right to summary judgment. *Id.* at 381–82. A genuine issue of material fact exists if there is a dispute that is real, not merely argumentative, imaginary or frivolous. *Id.* at 382. Mere speculation and conjecture are not enough to create a genuine issue of material fact. *Id.* at 378.

"The propriety of summary judgment is purely an issue of law which we review *de novo* on the record submitted and the law." *Bonds v. Missouri Dep't of Mental Health*, 887 S.W.2d 418, 421 (Mo.App. W.D.1994). We review the record in the light most favorable to the party against whom summary judgment was entered, and will affirm if the judgment is sustainable as a matter of law under any legal theory. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376.

## III. LEGAL ANALYSIS

In his motion for summary judgment, Mr. Kreisel asserted Ordinance 477 was invalid because it was a zoning ordinance, yet was not enacted in compliance with the notice and hearing requirements set forth in Section 89.050, which states:

> The legislative body of such municipality shall provide for the manner in which such [zoning] regulations and restrictions and the boundaries of such districts shall be determined, established, and enforced, and from time to time amended, supplemented, or changed. ***However, no such regulation, restriction, or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen days' notice*** of the time and place of such hearing shall be published in an official paper or a paper of general circulation in such municipality.

Sec. 89.050 (emphasis added).

■ In order to determine whether the City violated Section 89.050 in enacting Ordinance 477, we must examine its terms and determine whether it fits within the definition of a zoning ordinance. If so, then it is invalid, for it is well-settled that the failure to provide the notice set forth in Section 89.050 invalidates a zoning ordinance. *City of Louisiana v. Branham*, 969 S.W.2d 332 (Mo.App. E.D.1998); *Casey's General Stores, Inc. v. City of Louisiana*, 734 S.W.2d 890 (Mo.App. E.D.1987).

Section 1 of Ordinance 477 defines the meaning of junk, junkyard and junkyard

operator and owner. These definitions are not in issue here. Sections 2 and 3 set forth requirements for junkyard operation, and provide that failure to comply with these requirements constitutes a public nuisance, as follows:

Section 2. *General operating requirements.* The following **general operating requirements shall apply to all junkyard operators and junkyard owners operating within the City of Green Ridge, Missouri:**

a. The junkyard, together with things kept therein, shall at all times be maintained in a **sanitary condition.**

b. **No water shall be allowed to stand** in any place on the premises in such matter as to afford a breeding place for mosquitoes.

c. **Weeds and vegetation on the premises**, other than trees, shall be kept at a height of not more than four inches.

d. **No garbage or other waste** liable to give off a foul order or attract vermin shall be kept on the premises; nor shall any refuse of any kind be kept on the premises.

e. **No junk shall be allowed to rest upon or protrude over any public property**, street, alley, walkway, or curb or become scattered, washed off or blown off the business premises.

f. Junk shall be stored in piles not exceeding ten feet in height and shall be arranged so as to permit **easy access to all such junk for fire fighting purposes.**

g. No combustible material of any kind not necessary or beneficial to the business shall be kept on the premises; nor shall the premises be allowed to become **a fire hazard.**

h. Gasoline and oil shall be removed from any scrapped engines or vehicles on the premises.

i. No junk or other material shall be burned on the premises in any matter [sic] not meeting the approval of the chief of the **fire department**, which approval shall not be unreasonably denied.

j. No noisy processing of junk or other **noisy activity** shall be carried on in connection with the business on Sunday, Christmas, Thanksgiving, or at any time between the hours of 6:00 p.m. and 7:00 a.m.

k. The area on the premises where junk is kept (other than indoors) shall be **enclosed, except for entrances and exits, with a solid vertical wall or fence** of a minimum height of eight (8) feet measured from ground level. Entrances and exits shall not be wider or more numerous than reasonably necessary for the conduct of the licensed business. Said wall or fence and its posts (which shall be placed on the inside of said wall or fence) shall be constructed of wood which is treated so as not to rot or be susceptible to termites or other similar pests, and shall be constructed, maintained and anchored so as not to sag, become unsightly, or fall over in high winds.

l. The junkyard operator shall:

(1) Have and display current **licenses** or registration with the State of Missouri pursuant to RSMo. Section 301.128 (salvage business licensee), or show that he or she is not required to have such licenses or registration;

(2) Maintain **records** open for inspection pursuant to RSMo. Section 301.225 and records proving ownership on all motor vehicles or trailers in the operator's possession, or show that he or she is not required to maintain such records;

(3) Comply with the requirements of RSMo. Sections 301.217 to 301.229, or show that he or she is not required to so comply.

Section 3. *Nonconforming junkyards. All junkyards in violation of this ordinance are hereby declared to be public nuisances, and the operation of a junkyard in violation of*

*this ordinance is an ordinance violation and unlawful* . . . .

Ord. 477 (emphasis added).

Mr. Kreisel asserts that Ordinance 477 is a zoning ordinance subject to Section 89.050's notice and hearing requirements because it regulates the "use" of buildings or land relating to health and safety, building height, and the environment, and this comes within the definition of zoning.

■ Mr. Kreisel is correct that some of the purposes of enacting zoning ordinances are to promote the health and safety of residents and to regulate the use of buildings and land. While Missouri has not adopted a specific definition for the term "zoning ordinance," Section 89.020 describes the zoning power given to Missouri municipalities as follows:

> *For the purpose of promoting health, safety, morals or the general welfare of the community,* the legislative body of all cities, towns, and villages is hereby *empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, the preservation of features of historical significance, and the location and use of buildings, structures and land* for trade, industry, residence or other purposes.

Sec. 89.020.1 (emphasis added). Thus, Section 89.020.1 provides that a city may zone through regulating and restricting how buildings are built, what size they may be, where they may be located and how they may be used. Section 89.030 further provides that the city "may divide the municipality into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of sections 89.010 to 89.140; and within such districts may regulate and restrict the

erection, construction, reconstruction, alteration or use of buildings, structures, or land." *Id.*

These descriptions in the Missouri statutes as to the purposes for which a municipality may zone comport with the generally recognized definition of a zoning ordinance as an ordinance which regulates the use of land and buildings according to districts, areas, or locations. 8 McQuillin, Municipal Corporations, § 25.53, at 137. The definition of "zoning" also includes "[d]ivision of land into zones, and within those zones, regulation of both the nature of land usage and the physical dimensions of uses including height setbacks and minimum area." *Black's Law Dictionary* 1618 (6 th ed.1990).

As is evident, Ordinance 477 does not regulate junkyards by district. It does not limit the operation of junkyards to particular areas of the City, nor does it limit how many junkyards may be located in any particular area or district. To the contrary, the ordinance regulates the activities of a junkyard irrespective of the location of the junkyard within the City, and permits a junkyard to exist if it meets these requirements. It thus does not appear to be a zoning ordinance in the sense that the term is commonly understood.

Mr. Kreisel nonetheless argues that Ordinance 477 is a zoning ordinance because Section 89.020 says that zoning ordinances may be used to promote public health and safety. He argues, therefore, that since zoning ordinances regulate health and safety through regulating the use of buildings, and since this ordinance addresses health and safety in his operation of his junkyard, therefore this ordinance is a zoning ordinance.

■ Mr. Kreisel's argument commits the logical fallacy of "affirming the consequent."[2] He fails to recognize that, while

---

2. The fallacy is often expressed as "If p, then q; q; therefore p." The statement is not true because there may be things other than p that also occur with q. Copi gives the following examples of committing the fallacy of affirm-

zoning ordinances may address health and safety issues, other types of ordinances may also address health and safety issues without becoming zoning ordinances. In other words, the mere fact that a purpose of zoning ordinances is to regulate public safety does not mean that all ordinances which regulate health and safety are zoning ordinances. To the contrary, there are many other kinds of ordinances which also regulate public health and safety.

We recently addressed a similar issue in *Borron v. Farrenkopf,* 5 S.W.3d 618 (Mo. App. W.D.1999). In that case, the owners of a farm sought to run a large concentrated animal feeding operation (CAFO) involving thousands of hogs. Linn County enacted a county health ordinance which regulated CAFO's as to matters such as soil, water and air degradation resulting from the waste generated by the operation, setback and building requirements, and so forth. The Borrons brought suit, alleging that the ordinance was, in effect, a zoning ordinance, and that Section 64.620 specifically precludes counties from zoning relating to use of land for the raising of livestock.

In *Premium Standard Farms Inc. v. Lincoln Township of Putnam County,* 946 S.W.2d 234, 238 (Mo. banc 1997), the Supreme Court had held that a township's zoning of hog farms violated Section 64.420. In *Borron,* we distinguished *Premium Standard* on the basis that in *Bor-*

*ron* the county had specifically indicated that the purpose of its regulation was to regulate the health and safety of its residents, and that hog farming is known to affect health and safety. Citing *Avanti Petroleum, Inc., v. St. Louis County,* 974 S.W.2d 506 (Mo.App. E.D.1998), we held in *Borron* that the mere fact that a law has an effect on land use does not make it a zoning ordinance where its purpose is to protect health and safety, and that Linn County was authorized by Section 192.300 to pass laws promoting the health of its residents. *Borron* concluded that since the regulation of structures and lagoons at the hog facility was rationally related to public health enhancement and disease prevention, "[t]he purpose of the ordinance was to regulate for health concerns rather than for a uniform development of real estate," 5 S.W.3d at 622, and the ordinance was thus a health ordinance and not a zoning ordinance. *Id.*

■ *Borron* thereby recognized that the mere fact that an ordinance affects how structures are placed and how a business may be operated does not make it a zoning ordinance. To the contrary, where the purpose of an ordinance is primarily to regulate for health concerns rather than to provide for uniform development of real estate, then the ordinance will not be held to be a zoning ordinance, but rather an ordinance related to health and welfare.[3]

---

ing the consequent (rather than the antecedent) of the conditional premise:
> If Bacon wrote *Hamlet,* then Bacon was a great writer.
> Bacon was a great writer.
> Therefore Bacon wrote *Hamlet.*

IRVING M. COPI, INTRODUCTION TO LOGIC, 263 (6th ed.1982).

**3.** *See also Goodell v. Humboldt County,* 575 N.W.2d 486 (Iowa 1998) (because ordinances regulating livestock did not regulate land use by district, court found they were not an exercise of zoning power); *Town of Islip v. Zalak,* 165 A.D.2d 83, 566 N.Y.S.2d 306 (Dept.1991) (ordinance not a zoning law merely because it touches the use of land, especially if ordinance merely applies to activities wherever they are carried out in the

town, without suspending or limiting in any way the application of zoning laws); *Square Lake Hills v. Bloomfield Tp.,* 437 Mich. 310, 471 N.W.2d 321 (1991) (ordinance is not a zoning ordinance if it only regulates "activities" on land, rather than use of land according to districts); *City of Batavia v. Allen,* 218 Ill.App.3d 545, 161 Ill.Dec. 239, 578 N.E.2d 597 (2 Dist.1991) (restriction which regulates establishments based on the type of business they conduct, without affecting the location of the business, are not zoning provisions). Furthermore, the very purposes of the building and structure restrictions in Ordinance 477 are related to the purpose of preserving the general health of the public rather than for a uniform development of real estate.

Here, Ordinance 477 says on its face that its purpose is to prevent public nuisances, by stating that junkyards operated in violation of its terms are declared to be public nuisances. The City was given the right to regulate health and safety, and to prevent public nuisances, by the provisions of Chapter 79 relating to the powers of fourth-class cities. Thus, Section 79.370, under the heading "Police and Health Regulations," states:

**79.370.  Board shall regulate sanitary conditions**

The board of aldermen shall have power, by ordinance, to secure the general health of the inhabitants of the city by any measure ... to regulate or prevent the carrying on of any business which may be dangerous or detrimental to the public health, ... **and to pass ordinances for the prevention of nuisances and their abatement.**

Sec. 79.370  (emphasis added).

A review of the provisions of Ordinance 477 shows that it is directed toward issues which do, in fact, concern the prevention of nuisances and their abatement as a means of regulating businesses so as to promote the public health. Thus, the ordinance provides that the junkyard shall be sanitary and not allow the breeding of mosquitoes, that weeds and vegetation be controlled and garbage and waste which has a foul odor or which might attract vermin not be kept. It provides for public safety by requiring that junk not be allowed to intrude on public property, walks or alleys, and, in order to decrease the risk of fire, it regulates the manner of storing junk and requires the avoidance of storage of combustible materials. It provides for a fence or wall constructed so as to avoid termites, presumably in order to better effectuate control of the junk kept therein and to avoid the spread of junk, odors, and so forth. These requirements are uniform for junkyards throughout the City. Similar to the ordinances in *Borron* and *Avanti,* the purpose of Ordinance 477 is to regulate potential nuisances for reasons of public heath and safety, not to zone or otherwise provide for the uniform development of real estate, and it therefore does not fall within the definition of a zoning ordinance.

Mr. Kreisel nevertheless argues that the ordinance should be considered a zoning ordinance because its effect is that of a zoning ordinance. In support, he cites to *City of Louisiana v. Branham,* 969 S.W.2d 332 (Mo.App. E.D.1998). In that case, the Eastern District of this Court looked not at the face of the ordinance, but rather at the effect of the ordinance, in determining whether it fell within the boundaries of Missouri zoning law.

In *Louisiana,* the ordinance at issue defined the term "mobile home park" to include any two or more contiguous lots containing mobile homes. On its face, a general definitional ordinance such as this would not seem to be a zoning law. However, the City admitted that, prior to the enactment of the ordinance, people could place mobile homes on adjoining lots. After the ordinance, they could not do so. Therefore, since the effect of the ordinance was to disallow the plaintiffs from placing their mobile home on their lot since another mobile home was located on the next lot, it was, in effect, an amendment to the city's zoning ordinances, for:

[a]n ordinance change which effectively disallows a mobile home park where one would have been allowed before must be considered a zoning change, because labels should not prevail over substance.

*Louisiana,* 969 S.W.2d at 337. The court found that the effect of the ordinance was to amend the general zoning laws, since prior to its enactment mobile homes could be placed in areas no longer permitted, thus making a prior permitted land use improper. Therefore, the City was required to comply with the notice and hearing requirements applicable to zoning ordinance amendments, and, since it did not do so, the ordinance was invalid. *Id.*

■ Here, by contrast, Ordinance 477 did not enact a law which effectively pre-

cluded the operations of junkyards, nor did it otherwise make a prior permitted land use improper. Nothing in the ordinance relates to what property may be used as a junkyard or as to the locations, or districts, in which junkyards are permitted. Mr. Kreisel has identified nothing in the ordinance which would be so difficult to comply with that it would effectively preclude operation of a junkyard. Our review of the ordinance, set out above, shows that its provisions are directed toward making junkyards sanitary, and fire-safe, limiting odor, pests and vermin, keeping nearby public areas clear, and enclosing junkyards for the above purposes. No evidence was offered below that these conditions are so difficult to meet that a junkyard could not operate according to them. For all of these reasons, Ordinance 477 is unlike the ordinance which was invalidated in *Louisiana*, and that case does not assist Mr. Kreisel or support the trial court's ruling.

For the reasons stated above, we find the trial court erred in awarding summary judgment to Mr. Kreisel, and reverse and remand the case for further proceedings consistent with this opinion.

Judge VICTOR C. HOWARD and Judge THOMAS H. NEWTON, CONCUR.