COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JAIME VILLA, | § | No. 08-14-00047-CR |
| Appellant, | § | Appeal from the |
| v. | § | 120th Judicial District Court |
| | § | |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC# 20110D05357) |
| | § | |

## O P I N I O N

Appellant was convicted of engaging in organized criminal activity by committing an aggravated assault with a deadly weapon (Count I). Arising out of the same incident, he was also convicted of aggravated assault by use of a deadly weapon which caused serious bodily injury (Count II). He was sentenced to fifteen years' confinement on Count I and five years' confinement on Count II. In this appeal, he challenges the legal sufficiency of the evidence for both counts. For the reasons set out below, we reverse the judgment of conviction on Count I, but affirm as to Count II.

### FACTUAL SUMMARY

National Geographic, as a part of its "Lockdown" series on street gangs, interviewed Ruben Bejaran, a member of the Barrio Aztecas gang. The Barrio Aztecas started in 1985 within the Texas prison system. Inmates from El Paso going to prisons in other parts of the state

1

organized the gang initially for self-protection. It has grown into an organized crime network that generates income through the narcotics trade which includes the extortion of money from other narcotics dealers. *See Gomez v. State*, No. 08–12–00001–CR, 2014 WL 3408382, at *11 (Tex.App.--El Paso July 11, 2014, no pet.)(not designated for publication). It enforces its collection through assault, robbery, burglary, forgery, witness tampering, and murder. *Id*.

Bejaran started with the gang when he was 15 or 16 as an *esquina* -- a helper -- and then later as a prospect. To join the gang, one goes through a two year "prospect" period where they are expected to collect money, put hits on people, and sell drugs. Once accepted for membership, one is a member for life. Those who leave are subject to anything from being beaten to being killed. Bejaran claimed in the National Geographic interview that he was not just a member, but had risen to the rank of lieutenant in the organization.

Unfortunately for Bejaran, giving an interview to National Geographic was frowned upon by the gang. Not only that, but Bejaran claimed to have "rank" when in fact he did not, or he may not have been bringing in enough money, or he may have been involved in a prison riot not to the gang's liking. Whatever the true cause, he had earned himself a "green light" from the gang, meaning that any gang member who saw him was to do whatever they could do to him, including killing him on sight.

This background brings us to the facts of the crime charged in this case. Sometime on the afternoon of October 23, 2011, Bejaran went to a party with his brother. His brother was interested in developing a relationship with Lori, who was hosting the party. They were there for a short time when Bejaran decided to leave because he recognized "2Short," an active Barrio Azteca gang member.

2

About 2 a.m. the next morning, Bejaran and his brother returned to the party. Lori immediately approached them and advised that they should leave. As Bejaran turned to leave, he ran into "Giant," another Barrio Aztecas gang member. Giant recognized Bejaran and the two began to fight. Other persons, perhaps as many as nineteen, crowded around with some joining in the fight. Bejaran claimed to recognize at least five others who joined in the fight: Hawaiiano, Felix, Tiny,[1] 2Short, and Appellant, who was nicknamed Sleepy. Giant stabbed Bejaran's right arm through and through with a butcher knife. Tiny stabbed him in the rib cage. Felix or 2Short stabbed him on the left side. 2Short hit him in the right eye with a pipe. He felt getting hit on the back of the head with a pipe and went to the ground. Hawaiiano and Appellant were then stomping on him. He recalled Giant telling him he better not go the police. He then lost consciousness and awoke in the hospital.

Officer Jesus Medina attempted to interview Bejaran at the hospital. Bejaran at first only indicated that someone had hit him in the back of the head and he denied knowing who had attacked him. The officer concluded that Bejaran was likely a gang member and he notified the gang unit of the incident. Bejaran was next visited in the hospital by Detective Andres Sanchez of the gang unit. Bejaran gave Detective Sanchez a statement naming six specific people who assaulted him.

Detective Sanchez saw Bejaran four days later at the police station. He was shown a photo line-up and picked out 2Short, Hawaiiano, Giant, Tiny Luna, Felix, Tiny (from Chaparral), and relevant to this case, Appellant, as the persons who assaulted him. He identified 2Short, Hawaiiano, Giant, Tiny Luna, Felix, and Tiny (from Chaparral) all as members of the Barrio

---

[1] The record later indicates he identified two persons with the moniker "Tiny," one who is referred to as Tiny Luna and the other as Tiny from Chaparral.

3

Aztecas gang. His identification of Appellant as a gang member is less clear, and is discussed in depth later in this opinion.

At trial, Detective Sanchez was tendered as a gang expert without objection. He administers a database of local gang members as provided by Article 61.02 of the Code of Criminal Procedure. To be included in the database, a person has to meet certain criteria. There are two stand-alone criteria--either an admission by the person in a court, or a court judgment that the person is participating in a street gang. Meeting either of those two stand-alone criteria will put one in the database. Otherwise, a person has to meet at least two, and in some cases three, of the eight other possible criteria to make the database. Those eight other criteria include: self-admission outside of court; posting photos showing gang signs; information from a reliable informant; corroborated information from an unreliable informant; use of gang letters, words, marks, or colors; associating with other known gang members; being arrested with other gang members; recruiting gang members on the internet; or visiting gang members in jail who are not relatives. Using these criteria, Detective Sanchez concluded that 2Short, Hawaiiano, Giant, Tiny Luna, Felix, and Tiny (from Chaparral) were all Barrio Aztecas gang members. 2Short and Giant in fact pled guilty to this assault, admitting their gang affiliation.

Detective Sanchez was asked if he had an opinion whether Appellant was a gang member and he answered in the affirmative. He was not directly asked what that opinion was but he did testify that Appellant met two of the eight possible criteria for inclusion in the database-- evidence of an arrest with other gang members (the arrest in this case) and his familial relationship with known gang members (Felix and Tiny). Appellant has a tattoo with an Aztec type feature, but Detective Sanchez did not consider this evidence of a mark of the Barrio Aztecas.

4

Bejaran himself had an extensive criminal history, including convictions for possession of marijuana, burglary of a habitation, and two assaults with a deadly weapon. He was incarcerated at the time of trial, awaiting transport to the Texas Department of Corrections to serve a sentence for stabbing he committed.

## STANDARD OF REVIEW

Appellant contends that the trial court erred in not granting his directed verdict on both counts, effectively challenging the legal sufficiency of the evidence to support the convictions. *Canales v. State*, 98 S.W.3d 690, 693 (Tex.Crim.App. 2003); *Havard v. State*, 800 S.W.2d 195, 199 (Tex.Crim.App. 1989). Our legal sufficiency standard is articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex.Crim.App. 2010)(finding no meaningful distinction between the legal and factual sufficiency standards and applying *Jackson v. Virginia* as the only standard in Texas).

Under the *Jackson* standard, a reviewing court must consider all of the evidence in the light most favorable to the verdict and in doing so determine whether there is a rational justification for the jury's finding of guilt beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894–95, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. As the trier of fact, the jury is the sole judge as to the weight and credibility of evidence, and therefore, on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 894–95. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id.* On appeal, we serve only to ensure that the jury reached a rational verdict; we may not reevaluate the weight and credibility of the evidence; nor may we substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). We consider both direct and circumstantial evidence and all reasonable inferences that

5

may be drawn from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). The standard of review as to the sufficiency of the evidence is the same for both direct and circumstantial evidence cases. *Id.*; *Arzaga v. State*, 86 S.W.3d 767, 777 (Tex.App.--El Paso 2002, no pet.).

A person commits the offense of engaging in organized criminal activity if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, he commits or conspires to commit one or more of certain enumerated offenses. TEX. PENAL CODE ANN. § 71.02(a) (West Supp. 2015). Section 71.01(d) of the Texas Penal Code defines a criminal street gang as three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities. TEX. PENAL CODE ANN. § 71.01(d) (West 2011).

### AGGRAVATED ASSAULT

Aggravated assault is one of the enumerated offenses in Section 71.02(a). TEX. PENAL CODE ANN. § 71.02(a) (West Supp. 2015). A person commits an assault if the person intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2015). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8) (West Supp. 2015). An assault is aggravated if the person: (1) causes serious bodily injury to another, or (2) uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. § 22.02(a)(1), (2)(West 2011). A "deadly weapon" is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2015). The term "serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or

6

protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (West Supp. 2015).

In Count I, Appellant was charged with engaging in organized criminal activity by committing aggravated assault with a deadly weapon (a knife and pipe) "as a member of a criminal street gang, to wit: Barrio Azteca[.]"[2] In Count II, the State alleges that Appellant committed aggravated assault on Bejaran by either stabbing him with a knife or striking him in the head with a pipe.

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT COUNT I
### (ORGANIZED CRIMINAL ACTIVITY)

Under Count I, the State was required to prove that Appellant, with the intent to act as a member of a street gang (here the Barrio Aztecas), committed an aggravated assault with a deadly weapon. We understand Appellant's complaint to be that no rational jury based on the evidence in this case could find that Appellant was a member of the Barrio Aztecas, hence he could not have intended to participate in the assault as a member of the gang.

The State relies on three pieces of evidence which supposedly tie Appellant to the Barrio Aztecas: the direct testimony of Bejaran, the expert testimony from Detective Sanchez; and the fact that Appellant participated in the assault in light of a gang rule that every gang member was required to join in a fight. We address these in reverse order.

The State first remarks that when one member of the Barrio Aztecas gang gets into a fight, every other member present is required to join in. Detective Sanchez described it this way: "That's in their rules. They're one organization, they're there to support each other and they've

---

[2] The indictment does not charge Appellant with establishing, maintaining, or participating in a combination which is an alternate basis for pursuing an organized criminal activity case. *Barrientes v. State*, No. 08-02-00113-CR, 2003 WL 22725511, at *5 (Tex.App.--El Paso Nov. 20, 2003, no pet.)(not designated for publication); *Jaramillo v. State*, No. 08-00-00489-CR, 2002 WL 1301566, at *5 (Tex.App.--El Paso June 13, 2002, pet. denied)(not designated for publication).

got to instill fear in other people. So they're going to show that they come in numbers." In fact, failing to join in would put the gang member in the same position as Bejaran, as an ex-member. The State then argues that because it had direct evidence that Appellant joined in the fight, the jury could infer that Appellant was also a member of the gang.

This logic is flawed and reflects the fallacy of "affirming the consequent." The Texas Court of Criminal Appeals described the error with this reasoning in *Paulson v. State*, 28 S.W.3d 570, 572 (Tex.Crim.App. 2000): "That is like saying, 'Pneumonia makes you cough; therefore, if you cough, you have pneumonia.' This is the logical fallacy called 'affirming the consequent.'" *Id*. Substituting in the State's argument here yields this statement: Being in the gang requires you to fight. You fought. Therefore, you are in the gang. The flaw arises in the initial premise because people fight for reasons other than being in a gang. One might say, for instance, police officers will speed towards the scene of an accident. Mr. Smith is speeding towards the accident. But does that mean Mr. Smith is a police officer? Not necessarily, because there may be many reasons why he is speeding to the accident (he is an EMT, or concerned family member), just as there are any number of reasons one might join in a fight.[3] Here, for instance, Felix and Tiny (from Chaparral), who are both described as Appellant's relatives, stepped into the fight and Appellant may have had some perverse sense of familial duty to fight as well.[4] Or he simply may have been a lemming following the crowd. A rational jury could not employ a defective form of logic ("affirming the consequent") to infer Appellant was a member of the gang. *See Daniels v. Empty Eye, Inc.*, 368 S.W.3d 743, 752 (Tex.App.--Houston

---

[3] A Missouri court expressed the logical flaw this way: **"**The fallacy is often expressed as 'If p, then q; q; therefore p.' The statement is not true because there may be things other than p that also occur with q." *City of Green Ridge v. Kreisel*, 25 S.W.3d 559, 563 n.2 (Mo. App. 2000), *citing* Irving M. Copi, Introduction to Logic, 263 (6th ed.1982).

[4] There is evidence in the record that Felix is Appellant's brother. Felix is also the brother of Tiny (from Chaparral). But Tiny (from Chaparral) has a different last name from either Felix or Appellant, and is likely a stepbrother.

[14th Dist.] 2012, pet. denied) (holding inference based on affirming the consequent amounts to no evidence).

The second piece of evidence offered by the State is the expert opinion of Detective Sanchez. The State qualified Officer Sanchez as a gang expert without objection. Officer Sanchez used the criteria under TEX.CODE CRIM. PROC. ANN. art. 61.02 (West Supp. 2015) to administer a database of known street gang members. There are two stand-alone criteria for inclusion in the database--an admission in a court, or a court judgment, that one is in a street gang. Neither of those applies to Appellant. Otherwise, there are eight other criteria that merit inclusion into the database, but a person must meet at least two, and in some cases three of those criteria. Officer Sanchez testified that Appellant met two of the criteria. One was his arrest along with other gang members *in this case*, and his familial relationship to Felix and Tiny (of Chaparral). Because at least two criteria are necessary, but for his arrest in this case, he would not have been added to the database.

Appellant first challenges whether Detective Sanchez even rendered an expert opinion. After being qualified, the detective was asked if he had an opinion as to whether Appellant was a member of a gang and he replied that he did. But he was never directly asked what that opinion was. Instead, the questioning turned to the basis of the opinion, which does elicit the two positive criteria for inclusion in the database. Even if the jury inferred an opinion from the detective's other testimony, the charge would prohibit the jury from considering the rationale offered by the detective. In essence, any opinion that Detective Sanchez expressed would be based on this reasoning: because Appellant was arrested in this case along with other gang members, he is now included in a database, and because he is now in the database, he is considered a member of the Barrio Aztecas.

9

The jury was affirmatively instructed in the charge that neither the indictment, nor the arrest, were any evidence of guilt.[5] And to hold otherwise would almost be Orwellian in that a defendant's arrest for a particular charge would become substantive evidence of his or her guilt of that charge. This would turn the presumption of innocence on its head. We assign no probative value to Detective Sanchez's implicit opinion that Appellant was a member of a gang as no rational jury applying the trial court's instructions would credit Appellant's arrest in this case as evidence of his guilt in this case. And removing the criteria for gang participation that Detective Sanchez uses, excluding the arrest in this case as we must, leaves Appellant short of the minimum number of qualifying criteria necessary for inclusion in the gang database.

That leaves the testimony of Bejaran as the only evidence of Appellant's gang affiliation. That testimony appears at two places in the record and we recite it in full. First, Bejaran was asked specifically about each of the persons that he identified as his attackers. With regards to Giant, 2Short, Tiny Luna, and Tiny (from Chaparral) he clearly stated that each were members of the Barrio Aztecas gang. When asked about Appellant, he testified as follows:

Q. Okay. How did you meet the defendant?

A. I met him through his brother Tiny.

Q. Okay. And when did you meet him? Do you recall?

A. It was around July/August 2010.

Q. Okay. And how do you know Tiny from Chaparral?

---

[5] The charge included these admonitions:

"The fact that a person has been arrested, confined or indicted for or otherwise charged with an offense gives rise to no inference of guilt at trial."

….

"You are instructed that the grand jury indictment is not evidence of guilt. It is a means by which the defendant is brought to trial in a felony prosecution. It is not evidence nor can it be considered by you in passing upon the guilt or non-guilt of the defendant."

10

A. I've known him from the jail Annex.

Q. Okay. And did you work together?

A. And we worked together. I ended up running into him at a job site at some apartments, and he's the one who introduced me to Sleepy [Appellant], and he's the one who introduced me to Felix' brothers.

Q. And were they introduced to you just as, "these are my brothers," or were they introduced to you as gang members?

A. As prospects.

Q. Okay. So not quite gang members but prospects?

A. Yes.

Appellant contends this testimony does not link him to the gang. Instead, he contends that it only indicates that Felix' brothers, whoever they may be, were introduced as gang prospects. Bejaran's statement is that Tiny (from Chaparral) introduced Bejaran to Appellant *and* also introduced him to Felix' brothers, which would indicate the brothers were persons other than Appellant. Alternatively, the statement could be construed to mean that Tiny (from Chaparral) introduced Bejaran to Appellant, who then in turn introduced Bejaran to Felix' brothers. But under either interpretation, the two brothers introduced as prospects could not be Appellant. The State does not contend otherwise in its briefing, and this testimony does not support an inference that Appellant was a prospect, or a member of the Barrio Aztecas. Instead the State relies on these three questions from Bejaran's testimony:

Q. What happens next?

A. And then we're pushing the fight towards the middle of the street, right there by the driveway, and other gang members start coming towards me, at least like six at that time, at that moment.

Q. Do you recognize anybody?

A. Yes.

11

Q. Who did you recognize?

A. I recognized Hawaiiano. I recognized Felix. I recognized Tiny. I recognized Sleepy [Appellant]. I recognized 2Short and, of course, Giant.

The State contends that Bejaran's reference to "other gang members" coming towards him in the first question necessarily relates and identifies the six people in the third question as Barrio Aztecas gang members. The context of the statement becomes more confused, however, by other testimony from Bejaran that there were 17 to 19 other people in the immediate area, some of whom also were involved in the fight. Bejaran also individually discusses each of the six persons named and he states that five were gang members and provided some basis for how he knew that fact. But his specific testimony as to Appellant, as earlier set out, neither states that Appellant was a gang member, nor discusses how Bejaran would have known him to be a gang member.

This Court has noted the many ways that the State can satisfactorily prove street gang affiliation. *See Gomez v. State*, No. 08–12–00001–CR, 2014 WL 3408382, at *11 (Tex.App.--El Paso July 11, 2014, no pet.)(not designated for publication)(expert testimony plus photographs of Appellant displaying the Barrio Azteca gang sign); *Romero v. State*, No. 08–10–00074–CR, 2012 WL 3834917, at *5 (Tex.App.--El Paso Sept. 5, 2012, pet. ref'd)(not designated for publication)(defendant engaged in conversation exclusive to gang members); *Barrientes v. State*, No. 08-02-00113-CR, 2003 WL 22725511, at *6 (Tex.App.--El Paso Nov. 20, 2003, no pet.)(not designated for publication)(testimony that defendant frequented documented areas of gangs, associated with known gang members, used gang dress, and displayed an identifiable symbol associated with the gang); *Jaramillo v. State*, No. 08-00-00489-CR, 2002 WL 1301566, at *1 (Tex.App.--El Paso June 13, 2002, pet. ref'd)(not designated for publication)(testimony that

12

defendant appeared to be leader of a gang at a party where a fight occurred). We simply find nothing in this record demonstrating gang indicia with regards to Appellant.

We conclude that this evidence is insufficient to allow a rational jury to conclude Appellant was a member of the Barrio Aztecas, a necessary element of the State's case. Accordingly, we sustain Issue One, reverse the judgment of conviction and render a judgment of acquittal as to Count I.

## SUFFICIENCY OF THE EVIDENCE TO SUSTAIN COUNT II

Under Count II the State charged Appellant with aggravated assault with a deadly weapon, specifically the use of a knife and pipe. No evidence shows that Appellant himself used either a knife or a pipe, but the charge included an instruction on the law of parties, which is where we begin.

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX. PENAL CODE ANN. § 7.01(a) (West 2011). The trial court's charge instructed the jury that a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *See* TEX. PENAL CODE ANN. § 7.02(a)(2)(West 2011). The charge also instructed the jury that mere presence at the scene of an offense will not make a person a party to an offense. The application paragraph of the court's charge does not apply the law of parties to the facts of the case but we must measure the sufficiency of the evidence by a hypothetically correct jury charge. *See Adames v. State*, 353 S.W.3d 854, 861–62 (Tex.Crim.App. 2011).

13

Applying the law of parties to the offense of aggravated assault under Count II, Appellant is criminally responsible as a party to this offense if, acting with the intent to promote or assist in the commission of the assault of Bejaran by others, Appellant solicited, encouraged, directed, aided, or attempted to aid the others, acting with the intent to cause serious bodily injury to Bejaran with a deadly weapon. In determining the sufficiency of the evidence under the law of parties, we may look to events occurring before, during, and after the offense, and may rely on actions of the defendant that show an understanding and common design to commit the offense. *King*, 29 S.W.3d at 564.

Appellant's contention is that there is no evidence that he knew about or intended the use of a knife or a pipe. But as the State points out, the sequence of events shows that Appellant was present at the outset of the fight and joined in. Others began stabbing Bejaran and one person hit him in the face and back of the head with a pipe. A jury could infer that a butcher knife large enough to go through and through Bejaran's arm would be visible to anyone in the area. A jury would be justified in concluding such a butcher knife, and a pipe used to hit a person in the head, were deadly weapons. Appellant chose to join in at the end and *aid* the others by "stomping" on Bejaran while he was on the ground. Significantly, the stomping occurred at the end of the fight, after the stabbing and clubbing had occurred and which would have been evident to those in the vicinity. We conclude that there was legally sufficient evident to convict Appellant of aggravated assault with a deadly weapon under the law of parties. We overrule Issue Two and affirm the judgment of conviction for Count II.

The trial court's original certification of the defendant's right to appeal reflected that Appellant did not have a right to appeal because it was a plea bargain case. Appellant signed the certification and acknowledged he had been informed of his right to appeal, including any right

to file a *pro se* petition for discretionary review. We reviewed the first certification and concluded that it was inaccurate because the record did not show it was a plea bargain case. Consequently, we ordered the trial court to enter a new certification. The new certification reflects Appellant has a right to appeal, but it does not bear his signature. *See* TEX.R.APP.P. 25.2(d). To ensure Appellant understands he has a right to file a *pro se* petition for discretionary review, we ORDER Appellant's attorney to send Appellant a copy of the opinion and judgment, notify Appellant of his right to file a *pro se* petition for discretionary review, and inform Appellant of the applicable deadlines. *See* TEX. R. APP. P. 48.4, 68. Appellant's attorney is further ORDERED to comply with all of the requirements of TEX.R.APP.P. 48.4.

ANN CRAWFORD McCLURE, Chief Justice

April 22, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

15